COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-388-CR

 

 

DAVID WAYNE BLACK                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant David Wayne Black
appeals his jury conviction on two counts of aggravated assault and one count
of violation of a protective order.  In
two points, Appellant challenges the legal and factual sufficiency of the
evidence supporting the aggravated assault conviction and the deadly-weapon
finding made in conjunction with the finding of a violation of the protective
order.  We affirm.

Background

Appellant fathered six
children with his common law wife, Penny Black.  The couple and their children lived together
off and on for many years until, on July 7, 2004, in cause number 322-369512-04
in the 322nd Judicial District Court, Penny obtained a protective order against
Appellant enjoining him from communicating with her in a threatening or harassing
manner and going within 200 yards of certain locations. 

On the evening of July 17,
2004, ten days after the protective order issued, Appellant contacted Penny by
phone at her home.  Penny testified that
Appellant convinced her to meet him by promising to provide money for their
children.  Penny left in her van with
three of their children to meet Appellant around 9:00 or 9:30 in the
evening.  








Penny and her children met
Appellant in a convenience store parking lot. 
Penny stated that Appellant pulled his vehicle next her vehicle so that
the driver=s side doors
faced each other while the vehicles faced opposite directions.  Penny said that Appellant stood outside of
her driver=s-side
window for the duration of their conversation. 
Penny testified that Appellant became hostile and agitated during their
conversation and at one point reached his arms into the car through Penny=s driver=s-side
window, which was one-third of the way down. 
After talking for about twenty minutes, Penny eventually agreed to allow
Appellant to come to her home as a ruse to enable her to get away and use her
cell phone to call 911.  








At that point, but before
Penny drove out of the convenience store parking lot, Appellant returned to his
car, sat down, and shut his car door. 
Then, according to Penny, Appellant reached under his car seat and pulled
out a knife Awith a very
sharp blade and a hook on the end.@  Penny testified that the blade
of the knife appeared to be about five inches long.  Penny stated that, while holding the knife
with the blade pointing toward the car door so that Penny and Ashley could see
it, Appellant threatened: AI=m going to
slice ya=ll up tonight, tomorrow night, and every other night, until I kill
your F=ing A=s.@ Penny testified that when Appellant made this threat, her car window
remained one-third of the way down while Appellant=s was all the way down.  Penny
testified that she believed the knife to be a deadly weapon capable of
inflicting death or serious bodily injury. 
Penny further testified that she feared for her life because of
Appellant=s threat and
the knife.  After Appellant threatened
Penny and Ashley, Penny fled the area in her van and called the police.  Penny said that Appellant pursued her and
attempted to run her off of the road twice before eventually ending his
pursuit.  Penny then pulled into a gas
station where she met with the police and relayed the events of the
evening.   

Penny and Appellant=s eleven-year-old daughter, Ashley Black, also testified about the
evening=s events.  Ashley testified that
Appellant became angry during his conversation with Penny.  Ashley stated that Appellant pulled out a
knife with a Ablade and
hook on it@ that Alooked sharp@ and said
that he would Aslice [her]
and [her] family up tonight and every other night until he kill[ed them].@  Ashley said that Appellant
held the knife so that she could see it and that she feared for her and her
family=s lives because of Appellant=s threat to Aslice them.@   

Officer Dunn arrived at the
gas station in response to Penny=s 911 call. Upon arriving at the scene, Officer Dunn spoke with Ashley
Black.  Officer Dunn testified that
Ashley told him that Appellant had pulled out what she described as a Apocket knife@ during his
conversation with Penny.  Officer Dunn
further testified that Ashley told him that Appellant spoke in a Amean and scary@ voice while
holding the knife.  According to Officer
Dunn, a pocket knife can be a deadly weapon. 









The jury convicted Appellant
of two counts of aggravated assault and one count of violation of a protective
order.  In count one, the jury found
Appellant guilty of intentionally or knowingly threatening imminent bodily
injury to Penny Black while using or exhibiting a deadly weapon.  In count four, the jury found Appellant
guilty of intentionally or knowingly threatening imminent bodily injury to Ashley
Black while using or exhibiting a deadly weapon.  In count two, the jury found Appellant guilty
of intentionally or knowingly violating a protective order.  In conjunction with count two, the jury also
made an affirmative finding that Appellant=s knife constituted a deadly weapon. 
The jury assessed Appellant=s punishment at thirty-five years for count one, twenty years for
count two, and forty years for count four. 


Standard of Review

In two points, Appellant
challenges the legal and factual sufficiency of the evidence.  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).








In reviewing the factual sufficiency
of the evidence to support a conviction, we are to view all the evidence in a
neutral light, favoring neither party.  See
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.  Id. at 484.  There are two ways evidence may be factually
insufficient:  (1) when the evidence
supporting the verdict or judgment, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 

In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  








A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that supports
the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

Discussion

Aggravated Assault by Threat








In his first point, Appellant
challenges the legal and factual sufficiency of the evidence supporting his
convictions for aggravated assault. A person commits the offense of assault if
the person intentionally or knowingly threatens another with imminent bodily
injury.  Tex. Penal Code Ann. ' 22.01(a)(2) (Vernon Supp. 2006); Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. [Panel Op.] 1981). 
Aggravated assault by threat is a Anature of conduct offense@ that can be committed only by knowingly or intentionally causing the
victim to reasonably apprehend imminent bodily injury because of a communicated
threat.  In re S.B., 117 S.W.3d
443, 450 (Tex. App.CFort Worth
2003, no pet.); Guzman v. State, 988 S.W.2d 884, 887 (Tex. App.CCorpus Christi 1999, no pet.). 
A threat can be communicated by actions or conduct as well as
words.  Blount v. State, 452
S.W.2d 164, 166 (Tex. Crim. App. 1976). 
A person commits the offense of aggravated assault if the person uses or
exhibits a deadly weapon during the commission of an assault.  Tex.  Penal Code Ann. ' 22.02(a)(2) (Vernon Supp. 2006); Butler v. State, 928 S.W.2d
286, 288 (Tex. App.CFort Worth
1996, pet. ref=d).  Because Appellant challenges the
deadly-weapon element of aggravated assault in his second point, we will focus
on the other elements of aggravated assault in analyzing his first point.  

Penny and Ashley=s testimony provides legally and factually sufficient evidence to
support a finding that Appellant intentionally and knowingly threatened Penny
and Ashley with bodily injury.  Both
Penny and Ashley testified that Appellant=s threat to Aslice ya=ll up . . . until I kill your F=ing A=s@ caused them to fear for their lives. 
Appellant thus knowingly and intentionally caused Penny and Ashley to
reasonably apprehend bodily injury. Accordingly, the only element of assault
that arguably lacks evidentiary support is Aimminent bodily injury.@

Imminent means Anear at hand; mediate rather than immediate; close rather than
touching; impending; on the point of happening; threatening; menacing;
perilous.@  Devine v. State, 786 S.W.2d 268, 270
(Tex. Crim. App. 1989); Neagle v. State, 91 S.W.3d 832, 834 (Tex. App.CFort Worth 2002, pet. ref=d) (quoting Black=s Law Dictionary 750 (6th ed.
1990)).  A threat of imminent bodily
injury requires a present rather than a future threat.  Devine, 786 S.W.2d at 270; Kessler
v. State, 850 S.W.2d 217, 222 (Tex. App.CFort Worth 1993, no pet.).  













In determining whether a
threat refers to future rather than imminent bodily injury, courts have
considered the appellant=s present
ability to carry out the threat and the remoteness of the triggering
event.  Devine, 786 S.W.2d at
270-71; Hill v. State, 844 S.W.2d 937, 938 (Tex. App.CEastland 1992, no pet.); see also Riggins v. State, 1994
WL 525884, at *2 (Tex. App.CHouston [1st Dist.] Sept. 29, 1994, no pet.) (not designated for
publication).  Appellant argues that,
because he threatened Penny while both sat in their separate cars, he did not
threaten Aimminent
bodily injury.@  Although two car doors stood between
Appellant and Penny, Appellant nevertheless had the present ability to carry
out his threat.  See Hillburn v. State,
627 S.W.2d 546, 548 (Tex. App.CAmarillo 1982, no pet.) (holding the threat of bodily injury imminent
despite the fact that the appellant, who brandished a knife while threatening
his victim, could not have consummated his threat because Alocked car doors negated any ability to cause physical harm@ to the victim); Tanksley v. State, 656 S.W.2d 194, 196 (Tex.
App.CAustin 1983, no pet.) (holding a prisoner=s being behind a locked jail door at the time he threatened the jailer
with a sharpened toothbrush handle immaterial to the determination of the
imminence of a threat).  From Appellant=s threat to Aslice ya=ll up,@ a
reasonable inference may be drawn that he would do so when he accompanied Penny
and Ashley to their house.  Appellant
thus had the present ability to carry out his threat.  Further, Appellant did not condition his
threat on some future, remote event. 
Appellant gave Atonight@ as the time frame for the execution of his threat.  As Appellant made his threat around 9:00 or
9:30 in the evening, Atonight@ was Anear at hand@ and Aimpending.@  See Devine, 786
S.W.2d at 270.  Thus, we hold the
evidence is legally sufficient to support the jury=s finding that Appellant intentionally or knowingly threatened Penny
and Ashley with imminent bodily injury. 
We further hold the evidence, viewed in a neutral light, is factually
sufficient to support the jury=s finding.  We overrule
Appellant=s first
point.  

Deadly Weapon








In his second point,
Appellant challenges the legal and factual sufficiency of the evidence to
support the deadly-weapon element of aggravated assault and the jury=s deadly-weapon finding made in conjunction with his conviction for
violating the protective order.  To hold
evidence legally sufficient to sustain a deadly-weapon finding, the evidence
must demonstrate that:  (1) the object
meets the statutory definition of a deadly weapon; (2) the deadly weapon was
used or exhibited during the commission of the felony; and (3) other people
were put in actual danger.  Drichas v.
State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Ex parte Jones,
957 S.W.2d 849, 851 (Tex. Crim. App. 1997). 
The Texas Penal Code defines a deadly weapon as Aanything that in the manner of its use or intended use is capable of
causing death or serious bodily injury.@ Tex. Penal Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2006). 
Although a knife is not a deadly weapon per se, the court of criminal
appeals has held that an object such as a knife can be a deadly weapon if the
actor intends to use the object in a way in which it would be capable of
causing death or serious bodily injury.  McCain
v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000); Russell v.
State, 804 S.W.2d 287, 290 (Tex. App.CFort Worth 1991, no pet.). 
Wounds need not be inflicted before a knife can be determined to be a
deadly weapon.  Brown v. State,
716 S.W.2d 939, 946 (Tex. Crim. App. 1986); Rogers v. State, 877 S.W.2d
498, 500 (Tex. App.CFort Worth
1994, pet. ref=d). 








When the victim sustains no
actual injury, the State must present evidence of other factors to establish
that a knife is a deadly weapon.  Blain
v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); In re D.L.,
160 S.W.3d 155, 166 (Tex. App.CTyler 2005, no pet.).  The
relevant factors include the following: (1) size, shape, and sharpness of the
knife; (2) manner of its use or intended use; (3) testimony of the knife=s life-threatening capabilities; (4) the physical proximity between
the victim and the knife; and (5) the words spoken by appellant.  See, e.g., Thomas v. State, 821 S.W.2d
616, 619-20 (Tex. Crim. App. 1991); Tisdale v. State, 686 S.W.2d 110,
115 (Tex. Crim. App. 1985) (op. on reh=g); Williams v. State, 575 S.W.2d 30, 32 (Tex. Crim. App.
[Panel Op.] 1979); Garcia v. State, 17 S.W.3d 1, 4 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d).  No one factor is
determinative, and the fact finder must examine each case on all of its facts
to determine whether the knife is a deadly weapon.  See Garcia, 17 S.W.3d at 4.  

Appellant contends that the
physical proximity between the victim and the weapon is a primary consideration
in a deadly-weapon determination.  In
support of his contention, Appellant cites two court of criminal appeals cases
in which a lack of physical proximity between the knife and victim affected the
knife=s capability to be deadly. 
Appellant, however, overstates the importance of physical proximity to
the holdings of these cases.  In Alvarez
v. State, the appellant swung a linoleum knife at a distance of four feet
from a police officer.  566 S.W.2d 612,
613 (Tex. Crim. App. [Panel Op.] 1978). 
The court considered this distance in its deadly-weapon determination,
but did not find it determinative.  Id.  The court noted that testimony established
neither the size nor shape of the linoleum knife nor that the victim feared for
his life.  Id. at 614.  These factors, along with the four-foot
distance from which appellant exhibited the knife, led to the court=s holding that the linoleum knife did not constitute a deadly
weapon.  Id.








In Davidson v. State,
appellant held a knife with a three-inch blade at a distance of six feet from
his victim.  602 S.W.2d 272, 273 (Tex.
Crim. App. [Panel Op.] 1980).  Once
again, the court considered this distance in its deadly-weapon determination
but did not find it determinative.  Id.  The court noted the small size of the blade
and the testimony of the victim that, although he feared for his life, his fear
did not arise because of appellant=s exhibition of the three-inch knife, but rather because an assailant
had previously robbed a friend in the same location.  Id. 
The court held that under those circumstances the three-inch knife did
not constitute a deadly weapon.  Id.








In this case, the evidence is
legally and factually sufficient to support a finding that Appellant=s knife constituted a deadly weapon. 
Although the State did not present the knife at trial, the testimony
established the size, shape, and sharpness of the knife.  Both Penny and Ashley testified that the
knife had a very sharp blade with a hook on it. 
Penny described the blade of the knife as being five inches in
length.  Officer Dunn testified that
Ashley described the knife as a pocket knife. 
Although Officer Dunn=s testimony regarding Ashley=s description of the knife potentially conflicts with her description
at trial, this  conflict does not render
the evidence insufficient.  When faced
with conflicting testimony, we presume that the trier of fact resolved any such
conflict in favor of the verdict and defer to that resolution.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993); see also Nickerson v. State, 2005 WL 1356440, at *6 (Tex.
App.CFort Worth June 9, 2005, pet. ref=d) (not designated for publication).

Testimony addressed the
manner of the knife=s intended
use.  By holding the knife so that Penny
and Ashley could see it while threatening to Aslice ya=ll
up . . . until I kill your F=ing A=s,@ Appellant expressed an intent to use the knife to kill his
family.  Testimony also addressed the
physical proximity between the knife and Penny. 
Although both Appellant and Penny sat in their respective vehicles when
Appellant made his threat and exhibited the knife, this lack of physical
proximity, in light of the evidence supporting the other factors, does not
render the evidence insufficient to support a deadly-weapon finding.  See, e.g., Luna v. State,
2000 WL 730661, at *3 (Tex. App.CHouston [1st Dist.] June 8, 2000, no pet.) (not designated for
publication) (knife exhibited at a distance of six feet nevertheless held to
constitute a deadly weapon due to testimony concerning size, shape, and
sharpness of knife, intended use of the knife, capacity of the knife to cause
serious bodily injury, and appellant=s threats); Pouncy v. State, 2005 WL 1940116, at *3 (Tex. App.CEl Paso Aug. 11, 2005, pet. ref=d) (not designated for publication) (knife exhibited at a distance of
sixteen feet held a deadly weapon through testimony concerning other factors
such as the size, shape, and sharpness of knife and capability of knife to
cause serious bodily injury).








Testimony further addressed
the knife=s
life-threatening capabilities and the words spoken by Appellant.  Penny testified that the knife appeared to be
a deadly weapon capable of causing bodily injury.  Penny also testified as to the threatening
words spoken by Appellant while brandishing the knife.  We hold that the combination of these factors
provides legally sufficient evidence to support the jury=s finding that Appellant=s knife constituted a deadly weapon. 
We also hold the evidence, viewed in a neutral light, factually
sufficient to support the jury=s deadly-weapon finding.  We
overrule Appellant=s second
point.

Conclusion

Having overruled Appellant=s two points, we affirm the judgment of the trial court.

 

ANNE
GARDNER

JUSTICE

 

PANEL A:   DAUPHINOT
and GARDNER, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by
Assignment).

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2006











[1]See Tex. R. App. P. 47.4.