**Rose Marie DEVINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 133–87.**

Court of Criminal Appeals of Texas,
En Banc.

June 28, 1989.

John H. Hagler, (on appeal only), Dallas, for appellant.

Henry Wade, Former Dist. Atty. and John Vance, Dist. Atty. and Constance M. Maher, Michael A. Klein, Bill Sheetz and Warner Abrams, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted by a jury of robbery pursuant to V.T.C.A. Penal Code, § 29.02(a)(2).[1] Her punishment was assessed by the trial court at forty years confinement in the Texas Department of Corrections. The court of appeals affirmed her conviction in an unpublished opinion. *Devine v. State,* No. 05–85–00964–CR (Tex. App.—Dallas 1986).

In her sole ground for review, appellant contends the court of appeals erred in holding the evidence sufficient to show appellant threatened or placed complainant in fear of imminent bodily injury. Appellant contends the only threats she made involved future harm, and that the subjective belief of complainant that he was in danger of imminent bodily injury is insufficient to sustain her conviction. We granted appellant's petition for discretionary review to address this contention. See Tex.R.App. Pro., Rule 200(c)(2), (4) & (5).

### I

The facts here are undisputed. Appellant had been married to the complainant, Gerald Cox, but in 1972, the couple divorced. In December of 1983, appellant began calling Cox on the telephone, demanding money and threatening him each time if he failed to comply. In response to the first demand, Cox gave her $200 after being told his head would be "blown off" if he refused. The calls continued throughout 1984 until appellant had extorted about $10,500 from Cox. Each time, in response to threats to either having his head "blown off" or his house "bombed," the complainant turned over money to the appellant, meeting her in person for a total of twelve or thirteen separate confrontations. In December of 1984, Cox took his family to Oklahoma, then returned to Dallas alone.

Finally, in January 1985, when appellant demanded an additional $2,500, Cox refused to give her any more money. Appellant's threatening calls continued, and on January 10, 1985, Cox contacted the police. At trial, he testified that he had been "too scared" to notify the police before that date. Appellant called again on January 11, threatening to "kill me and my wife, and do something to my two small children that they would never forget." On January 16, Cox was wired with a body microphone and met appellant at an Arby's restaurant where she was arrested after he gave her an envelope containing a marked one dollar bill.

In its majority opinion, the court below noted instances of past conduct and threats of future harm occurring prior to January 16 in holding the evidence sufficient to support the conviction. For example, during their marriage, appellant had once held a gun up to Cox' head. Cox said that appellant once told him she carried a gun in her purse. He also stated that during the meeting at Arby's, where appellant was arrested, he feared that he would be killed: "I don't know how it would have happened, but I believe it would have happened, perhaps in the parking lot." He testified that "[if] something went wrong during the arrest, I was afraid she might shoot me in anger." At no time during the encounter did appellant take any overt action, such as displaying a weapon.

### II

In any case where sufficiency of the evidence is challenged, we must determine whether, when viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). § 29.02(a)(2), supra, provides that a person

---

**1.** The robbery statute provides, in pertinent part:

"(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code, and with intent to obtain or maintain control of the property, he:

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."

commits the offense of robbery if, in the course of a theft, he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." When a robbery is effected by threats of bodily injury or placing another in fear, that fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will. *Cranford v. State*, 377 S.W.2d 957, 958 (Tex.Cr.App.1964). Although *Cranford* was decided under the former penal code, its language has since been applied in context of § 29.02(a)(2), supra, in *Green v. State*, 567 S.W.2d 211 (Tex.Cr.App.1978). See also, G.S. REAMEY, CRIMINAL OFFENSES AND DEFENSES IN TEXAS 356 (1987). The threat or conduct placing another in fear must be of *imminent* bodily injury.[2]

■ Justice McCraw's dissent in the court of appeals observes that, although Texas courts have not defined the term, other state courts "have defined 'imminent' to mean 'ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near.' *People v. Victor*, 42 Cal.Rptr. 199, 211, 398 P.2d 391, [403] 62 Cal.2d 280, [299] (1965); *see also Loyd v. Moore*, 390 S.W.2d 951, 955 (Mo.Ct. App.1965) ('certain, immediate, and impending'); *Reynolds v. Manley*, 223 Ark. 314, [322], 265 S.W.2d 714, 719 (1954) (citing BLACK'S LAW DICTIONARY (rev. 4th ed.)); *State v. Huett*, 340 Mo. 934, [950], 104 S.W.2d 252, 262 (1937) ["threatening to occur immediately; near at hand; impending"] (citing Webster's New International Dictionary). Black's Law Dictionary defines 'imminent' to mean 'near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.' BLACK'S LAW DICTIONARY 676 (rev. 5th ed. 1979)." *Devine v. State*, supra, dissenting opinion at 2–3.

Furthermore, evidence of the legislative intent can be seen in the practice commentary to the theft statute, V.T.C.A. Penal Code, § 31.03. There, the authors discuss the definition of coercion provided by V.T.C.A. Penal Code, § 31.01, *viz:*

"(1) 'Coercion' means a threat, however communicated:

(A) to commit an offense;

(B) to inflict bodily injury in the future on the person threatened or another;

. . ."

They go on to observe that "[s]ubdivision (B) applies to threats to inflict bodily injury 'in the future,' *to distinguish it from robbery.*" (emphasis added) This certainly would seem to indicate that an offense involving threats of "future" bodily injury was intended to be theft, not robbery. Ergo, consistently with this apparent intent, we construe "imminent" bodily injury in § 29.02(a)(2), supra, to require a present, not a future threat.

### III

■ In the present case, there is nothing in the record to show Cox was threatened with *imminent* bodily injury during his meeting with appellant at the Arby's restaurant. There, appellant told Cox that she had almost had him killed the day before, but she had "cancelled" the plan when he agreed to show up with the money.[3] This is unlike the conditional threat in *Green v. State*, supra. In *Green*, defendant and his cohort confronted the teenaged complainant in a motel, face to face and the defendant threatened "[i]f you don't give me the money, I'm going to cave your head in." *Id.* at 212. This threat of harm to be inflicted immediately on the complainant had he failed to comply was held sufficient to show that he was placed in fear of imminent bodily injury. Here, the threats were of future harm only. Threatening to kill Cox at some time in the future if he

---

**2.** We note that threatening to "bomb" Cox' house does not even amount to a threat of bodily injury or death unless the threatening party knows someone is inside.

**3.** Appellant's conversation with Cox at Arby's was recorded by police, and previous telephone conversations between the two were recorded by the complainant. We have reviewed the transcripts of those recordings and find nothing to indicate any evidence of threats of imminent bodily injury or death.

had refused to hand over the money is not sufficient to show a threat of bodily injury or death to be inflicted imminently.

Besides the absence of any evidence of overt threats of imminent bodily injury on January 16, there is likewise nothing in the record to indicate that appellant had acted in such a way as to place him in fear of imminent harm. In the practice commentary to the current robbery provision, the authors note that § 29.02, supra, is essentially the same as the prior robbery statute, Vernon's Ann.P.C., art. 1408, as it "restates the art. 1408 elements with some expansion[,]" and "[a]s in prior law, the violence used or threatened must be for the purpose of compelling acquiescence to the theft." Under former art. 1408, supra, this Court has held "that to constitute the crime of robbery, there must be violence, or intimidation of such character that the injured party is put in fear." *Cranford v. State*, supra at 958. "The fear must arise from the *conduct of the accused however, rather than the mere temperamental timidity of the victim." Id.* at 959 (emphasis added). We may reasonably conclude that, as under former art. 1408, for purposes of § 29.02, supra, some conduct on the part of the perpetrator is necessary to place the complainant in fear.

The *Cranford* case, although relied upon by the majority in the court below, is easily distinguishable from the case at bar. There, the defendant "moved his hand to his back pocket in such a manner as to cause the prosecuting witness to believe he was in possession of a pistol, and thus her fear was justified." *Id.* at 959. Here, as Justice McCraw cogently observes, "[t]he complainant did not testify to any overt act by the appellant. There is no evidence that appellant was carrying a gun on the occasion in question, that she made threatening movements with her purse, or that she told the complainant that she was carrying a gun at that time. Nor is there testimony that she in any other way intentionally or knowingly placed him in fear of imminent bodily injury through her conduct at the meeting." *Devine v. State*, supra, dissenting opinion at 4–5. Although Cox testified that he was afraid and believed he would

be killed if he did not give appellant the money, the record is devoid of any evidence that he was placed in fear of imminent bodily injury by any intentional or knowing *conduct* of appellant, as required by *Cranford v. State*, supra.

Thus, despite the myriad instances of threats of future harm in this record, there is simply insufficient evidence of any threat of imminent bodily injury or death as required by § 29.02(a)(1), supra. The evidence is insufficient to prove appellant guilty beyond a reasonable doubt. Therefore, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for entry of an acquittal.

WHITE, J., concurs in the result.

McCORMICK, P.J., and DUNCAN and BERCHELMANN, JJ., dissent.