NUMBER 13-07-00290-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

DANNY ARZOLA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 156th District Court


of Bee County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza
 


 Appellant, Danny Arzola, was convicted on two counts of aggravated assault by
threat, each a second-degree felony. See Tex. Penal Code Ann. § 22.02(a)(2), (b)
(Vernon Supp. 2007). He now appeals, challenging the legal and factual sufficiency of the
evidence supporting both counts. We affirm. 

I. Background

 Arzola and Jamie Lee Lane had a sexual relationship while Lane was a minor.
Subsequently, Arzola was convicted of statutory rape and was incarcerated. After Arzola
returned from prison, Lane contacted Arzola's sister in order to see him. At that time,
Arzola was in a relationship with another woman, but after Lane made contact with him,
they attempted to resume their prior relationship.

 On October 13, 2006, Lane and her daughter had been staying at Arzola's home
at 1525 East Hefferman in Beeville, Texas for approximately one week, when Lane
decided that she wished to return home. Arzola called Lane's friend, Monica Gutierrez,
and asked her to pick up Lane and her belongings from Arzola's house. Upon arriving,
Gutierrez informed Arzola that she was there to pick up Lane. According to Gutierrez,
Arzola walked out toward her vehicle, took his shirt off, and started cursing and "throwing
gang signs," while Gutierrez stood with her car door in front of her. Gutierrez stated that
Arzola told her "to get the fuck off my property" while holding a knife, and that she felt
bothered and threatened by Arzola's actions. She testified that because she feared for her
life and for her son's life, she got into her car and left. Gutierrez then called the police.

 Lane stated that, once Gutierrez left, Arzola threatened her with a knife and said "I
should kill your bitch ass and let your daughter watch you suffer." When asked how close
Arzola was to her when he had the knife in his hand, Lane said "Oh, this close," while
pointing to her throat.

 Lane testified that she did not know whether Arzola was serious or not, but that
while Arzola was threatening her, she stayed very quiet and tears came to her eyes. Lane
stated that she was "not going to piss somebody off that has a knife in their hand." Lane
commented that the knife was a bit longer than the one produced by the State at trial, had
holes in it, was dull, and the bottom part was black, "like plastic and more of a stainless
steel." Lane testified that the knife Arzola brandished was capable of causing death or
serious bodily injury because "it's dull, but if you were to like really put force into it and
force it, yeah. Oh, yeah it could hurt somebody." She further stated that, after the incident,
Arzola closed the knife, put it away, and walked out of the room.

 Subsequently, Lane and Arzola went to his mother's house, which is adjacent to
Arzola's house. While there, they continued to argue, and Lane again told Arzola that she
wanted to go home. Lane stated that Arzola then said, "Well, just go home." Lane stated
that when the police arrived she was standing behind Arzola, and she gave the officer a
signal to come inside. Lane told the officer that she simply wanted to go home and that
Arzola did not hit her; Lane later testified that she said this because Arzola was standing
right next to her. According to Lane, once the officer arrived, Arzola hid the knife in a
pantry, slowly got up, went around the front of the house, and started talking to the officer.

 Lane testified that she didn't retrieve the knife but told Beeville Police Department
officer Regan Scott where it was at the time of the incident. Lane explained that Officer
Scott and fellow officer Patrick Reynolds were too busy calming down Arzola to retrieve the
knife.

 Officer Reynolds stated that he was dispatched to 1523 East Hefferman on October
13, 2006, where he found Arzola "very upset and angry" and wanting to know "why
everybody kept fucking with him." According to Officer Reynolds, Lane was afraid of
saying anything to him in front of Arzola and that when she did talk to him, Arzola
repeatedly attempted to intervene. Because Arzola continued to use abusive language in
public, Reynolds arrested him for disorderly conduct. See id. § 42.01 (Vernon Supp.
2007). Arzola was also charged with aggravated assault with a deadly weapon. See id.
§ 22.02.

 Officer Scott testified that he was also dispatched to Arzola's residence, where he
encountered Lane, who appeared distraught. Officer Scott asked Lane to separate from
Arzola; at that point, Arzola became agitated and began cursing. Lane then departed the
scene with her daughter. Once Arzola was arrested, Officer Scott advised Officer
Reynolds of Lane's account of events and gave him her location. Officer Reynolds then
spoke with Lane, who told him what happened prior to the officers' arrival.

 Arzola testified in his defense. He stated that once he and Lane decided to try to
rekindle their prior relationship, he invited her over to his house. Arzola stated that he did
not threaten Gutierrez, but told Lane to leave when Gutierrez arrived. Arzola testified that
Lane did not leave because "she was scared of her life." Arzola asked rhetorically, "Why
she's scared of her life if I'm telling her to leave?" Arzola testified that he did not threaten
Lane in any way, nor did he use a knife. He claimed that prior to the arrival of the police
he was not arguing with Lane, but rather was talking to his six-year-old nephew. Arzola
remarked that when he spoke to the officers, he did become agitated because he wanted
to know why people were "messing with him."

 A Bee County grand jury indicted Arzola for two counts of aggravated assault by
threat, against Gutierrez and against Lane. (1) See id. On February 27, 2007, Arzola waived
his right to a jury trial pursuant to article 1.13 of the Texas Code of Criminal Procedure. 
See Tex. Code Crim. Proc. Ann. art. 1.13 (Vernon 2005). On March 14, 2007, the trial
court convicted Arzola on both counts and sentenced him to two eight-year prison
sentences to run concurrently. On April 13, 2007, Arzola filed a timely pro se notice of
appeal.

II. Standard of Review

 The Texas Court of Criminal Appeals has declared that the relevant appellate
inquiry for legal sufficiency is whether, after considering the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Sanders v. State, 119 S.W.3d 818, 820 (Tex.
Crim. App. 2003). The court stated that this "standard is meant to give 'full play to the
[trier's] responsibility fairly' to 'draw reasonable inferences from basic facts to ultimate
facts.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 318 (1979)). A reviewing court is
not required to determine whether it believes that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, it must presume
that the trier of fact resolved any such conflict in favor of the prosecution, and accordingly
must defer to that resolution. State v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

 In determining whether the evidence is factually sufficient, we review all of the
evidence in a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
Unlike legal sufficiency inquiries, we do not assume that the jury resolved conflicting
evidence in favor of the prosecution. See id. at 415. Watson fashioned a two-prong
analysis to determine factual sufficiency. The first prong asks whether evidence introduced
to support the verdict is so weak that the jury's verdict seems clearly wrong and manifestly
unjust. Id. at 414-15. The second prong asks whether, considering conflicting evidence,
the jury's verdict is against the great weight and preponderance of the evidence. Id. at
415.

 Due to the nature of a factual sufficiency review, an appellate court is able to act as
a thirteenth juror to a limited degree, but it is not enough that the appellate court harbor a
subjective level of reasonable doubt to overturn a conviction that is founded on legally
sufficient evidence. Id. at 416-17. "That an appellate court would have acquitted a
defendant on the same facts that convinced a rational jury to convict has not ever by itself
met the criteria of manifest injustice." Id. at 416. To reverse a verdict for factually
insufficient evidence, we must "explain in exactly what way the State's evidence, while
legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way we
perceive the conflicting evidence greatly to preponderate against conviction." Id. at 414. 
An appellate court must first be able to say, with some objective basis in the record, that
the great weight and preponderance of the legally sufficient evidence contradicts the jury
verdict before it is justified in excising its appellate fact jurisdiction to order a new trial. Id.
at 417.

III. Discussion

A. Aggravated Assault - Gutierrez

 By his first and second issues, Arzola contends that the evidence supporting the first
count of the indictment, for aggravated assault by threat against Gutierrez, was legally and
factually insufficient. A person commits aggravated assault by threat if he intentionally or
knowingly threatens another with imminent bodily injury while using or exhibiting a deadly
weapon. See Tex. Penal Code Ann. §§ 22.01(a)(2) (Vernon Supp. 2007), 22.02(a)(2).

 Arzola first cites to the definition of "deadly weapon" in section 1.07(a)(17)(B) of the
Texas Penal Code and argues that the State failed to prove beyond a reasonable doubt
that the knife was a deadly weapon. See id. § 1.07(a)(17)(B) (Vernon Supp. 2007). The
statute defines "deadly weapon" as "anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury." Id.

 Knives are not, per se, deadly weapons. Tisdale v. State, 686 S.W.2d 110, 114
(Tex. Crim. App. 1985). The evidence at trial must have supported the conclusion that the
knife in this case was capable of causing death or serious bodily injury due to the manner
of its use by Arzola. See Tex. Penal Code Ann. § 1.07(a)(17)(B). The mere presence of
a deadly weapon, under proper circumstances, can be enough to instill fear and threaten
a person with bodily injury. Tisdale, 686 S.W.2d at 114. One circumstance that can show
the deadliness of a knife is when a threat is communicated by a defendant while displaying
the knife. See McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). As the court
of criminal appeals stated in McCain:

The provision's plain language does not require that the actor actually intend
death or serious bodily injury; an object is a deadly weapon if the actor
intends a use of the object in which it would be capable of causing death or
serious bodily injury. The placement of the word "capable" in the provision
enables the statute to cover conduct that threatens deadly force, even if the
actor has no intention of actually using deadly force.


Id.

 Gutierrez testified that Arzola said "get the fuck off my property" while holding the
knife and walking toward her. This evidence is sufficient to show that the knife in question
was a deadly weapon under McCain. See id. Arzola clearly communicated a threat while
holding the knife. It does not matter if Arzola intended for the serious bodily injury to result;
what matters is that he used the knife in a way in which it would have been capable of
serious bodily injury. See id. The evidence supports the conclusion that the knife used by
Arzola was a deadly weapon. See Tex. Penal Code Ann. § 1.07(a)(17)(B).

 Given Gutierrez's testimony that Arzola was walking toward her and threatening her
while brandishing the knife, we find the evidence to be legally sufficient to support the trial
court's conclusion that Arzola intentionally or knowingly threatened Gutierrez with imminent
bodily injury. See id. § 22.01(a)(2). Although Arzola denied threatening Gutierrez, we must
presume that the trier of fact resolved this evidentiary conflict in favor of the prosecution,
and accordingly must defer to that resolution. See Turro, 867 S.W.2d at 47.

 Moreover, we conclude that the evidence was factually sufficient to support Arzola's
conviction on count one. See Watson, 204 S.W.3d at 414-415. Arzola testified that he
could not explain why Lane did not leave when Gutierrez arrived or why Gutierrez, having
traveled to Arzola's house to pick up Lane, did not get out of her car. Although Arzola
claimed that he did not use a knife, he does not offer an alternate explanation of why
Gutierrez would not get out of her car after he asked her to come over, or why Lane would
not leave. We cannot say that the trial court's verdict on this count seems clearly wrong
or manifestly unjust. See id. Further, in considering the conflicting testimony, the verdict
was not against the great weight and preponderance of the evidence. See id. at 415. 
Arzola's first and second issues are overruled.

B. Aggravated Assault - Lane

 By his third and forth issues, Arzola argues that the evidence supporting the second
count of the indictment, for aggravated assault by threat against Lane, was factually and
legally insufficient. See Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). We disagree.

 Lane testified that Arzola said to her "I should kill your bitch ass and let your
daughter watch you suffer." Lane further testified as follows:

Q. How close was he [Arzola] to you when he had the knife in his hand?


A. Oh, this close. This close.


Q. Show me that again.


A. He was this close.


Q. So you're pointing to your throat?


A. Yes.


 As noted, under McCain, the deadliness of a knife may be inferred if threats are
communicated by the defendant while displaying the knife. See McCain, 22 S.W.3d at
503. Considering Lane's testimony that Arzola stated "I should kill your bitch ass and let
your daughter watch you suffer," while he was "this close" to her throat, we find sufficient
evidence of a threat to justify the finding that the knife brandished by Arzola was a deadly
weapon. See id.; see also Tex. Penal Code Ann. § 22.02(a)(2).

 Arzola disputes that the statement "I should kill your bitch ass and let your daughter
watch you suffer" qualifies as a threat of imminent bodily injury. See Tex. Penal Code Ann.
§ 22.01(a)(2). Arzola first contends that this statement was not a threat because Lane
testified that she didn't know whether Arzola was serious. However, Lane also testified
that she was "not going to piss somebody off that has a knife in their hand"; this statement
is evidence that Lane viewed Arzola's actions as threatening.

 Arzola next argues that his statement to Lane was not an imminent threat because
"a threat to do harm in the future is not a threat of imminent bodily injury or death." See
Devine v. State, 786 S.W.2d 268, 270-71 (Tex. Crim. App. 1989). Arzola specifically
contends that the statement "I should kill your bitch ass and let your daughter watch you
suffer" does not convey an imminent threat, but rather conveys a threat to do harm some
time in the future, because the word "should" is a verb used to describe future or past
events. However, Arzola's inclusion of "and let your daughter watch you suffer" indicates
that Lane's daughter might have been able to witness whatever act Arzola was threatening;
Lane's daughter was present at the house at the time of the incident. This evidence was
clearly sufficient to support the finding of an imminent threat under Devine. See id.

 We conclude that this evidence was legally sufficient to establish that the knife was
a deadly weapon and, considering the surrounding circumstances, it was legally sufficient
to establish that Arzola intentionally or knowingly threatened Lane with imminent bodily
injury. See Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2).

 Moreover, we find that the evidence was factually sufficient to support the verdict. 
See Watson, 204 S.W.3d at 414. Considering the differing accounts of Lane and Arzola,
the trial court's decision does not appear to be manifestly unjust. See id. Officers
Reynolds and Scott both testified that Lane looked distressed when they arrived and that
Arzola became agitated and tried to interfere with Lane when she was talking with them. 
Viewing the evidence from a neutral standpoint, we cannot say that the judge's verdict on
this count seems clearly wrong or manifestly unjust. See id. Finally, when considering the
conflicting testimony, Arzola's conviction of aggravated assault by threat against Lane was
not against the great weight and preponderance of the evidence. See id. Accordingly,
Arzola's third and fourth issues are overruled. 

IV. Conclusion

 We affirm the judgment of the trial court on both counts.



 

 DORI CONTRERAS GARZA,

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and

filed this the 7th day of August, 2008.
1. The first paragraph of the indictment read as follows:


[Arzola], on or about the 13th day of October, A.D., 2006, and before the presentment of this
indictment, in the County and State aforesaid, did then and there intentionally or knowingly
threaten Monica Gutierrez with imminent bodily injury by telling her "to get the fuck off his
property" while exhibiting gang signs and walking towards the said Monica Gutierrez, and the
defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the
manner and means of its use was capable of causing death or serious bodily injury.


The second paragraph of the indictment read as follows:


[Arzola], on or about the 13th day of October, A.D., 2006, and before the presentment of this
indictment, in the County and State aforesaid, did then and there intentionally or knowingly
threaten Jaime Leigh Lane with imminent bodily injury by telling her "I should kill your bitch
ass and let your daughter watch you suffer" and the defendant did then and there use or
exhibit a deadly weapon, to-wit: a knife, that in the manner and means of its use was
capable of causing death or serious bodily injury . . . .