Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-10-00274-CR

Gail **MAYBERRY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 09-05-041-CRW
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting opinion by:  Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  August 10, 2011

AFFIRMED

A jury convicted appellant Gail Mayberry of several counts of child endangerment.  In her sole point of error, Mayberry contends the evidence is insufficient to support her conviction. We affirm the trial court's judgment.

### BACKGROUND

On December 21, 2008, Mayberry came home from work and found numerous children in her home.  The children were out of school on Christmas break.  The children included her

fifteen-year-old son, her two other children, and several of their friends. According to certain testimony, when Mayberry arrived, her fifteen-year-old son asked if he could have the car keys so he and some of the other children could "go driving around" in the family station wagon. Mayberry contends her son was driving only to take the children home. Despite the fact that her son was fifteen and unlicensed, Mayberry handed him the keys. Mayberry did not accompany the children.

Mayberry's son drove the group around for a while, ultimately heading to a place known as the "third bridge," a bridge over water where children would fish and swim. When they got to the bridge it was dark and Mayberry's son turned the car lights off in an attempt to scare the other children. There is apparently a legend about a ghost woman or some other entity haunting the bridge. At least one of the girls was scared and wanted to go home. The group then returned to Mayberry's house. When the group arrived back at the house, Mayberry's son honked the horn and the only two children that stayed behind during the first "ride around," decided to go along on the second trip–all of those along on the first trip stayed in the car. There was evidence that before they left, Mayberry stepped outside and saw the children in the car. With the two additional passengers, there was insufficient space in the car seats for all of the children, requiring that at least some of them remain without a seatbelt. Including the fifteen-year-old driver, there were nine children in the car. One of the children testified that Mayberry told them some of them could sit in the storage compartment in the back. The group drove off with Mayberry's son still at the wheel.

On this second trip, the group decided to go back to the third bridge. Again, the lights were turned off in an attempt to scare the younger children. As before, one of the children wanted to go home so they left and went back to Mayberry's house. Two of the children got out

of the car, but Mayberry's son left a third time with six of the children still in the car. Their destination was once again the third bridge. This time, however, the evidence showed Mayberry's son drove very fast toward the bridge, causing the car to become airborne. When the car landed, the driver lost control, crashed through a fence, and landed in an empty pond. As a result of the crash, some of the children were seriously injured and two of them died. It was ultimately determined that Mayberry's son had been traveling over 100 miles per hour; he was the only child in the car wearing a seatbelt.

Mayberry was indicted on seven counts of child endangerment. After a jury trial, she was found guilty and the trial court sentenced her to two years in a state jail facility, but suspended the sentenced and placed Mayberry on two years community supervision. She was also ordered to pay a $1,500.00 fine and court costs. Mayberry then perfected this appeal.

## ANALYSIS

### *Standard of Review*

We begin by noting that although Mayberry raises both legal and factual sufficiency challenges to the evidence, the Texas Court of Criminal Appeals has abolished factual sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011) (citing *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (plurality opinion)). Now, the legal sufficiency standard established in *Jackson v. Virginia* is the only standard a reviewing court uses in determining whether the evidence is sufficient to support each element of the charged offense. *Brooks*, 323 S.W.3d at 895 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Accordingly, we will review Mayberry's issue as a challenge to the legal sufficiency of the evidence.

In reviewing a claim that the evidence is legally insufficient, the relevant question is

whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. This standard accounts for the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Accordingly, in analyzing legal sufficiency, we will determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### *Application*

Mayberry argues the State failed to produce sufficient evidence that she knew the danger to the children was "imminent" or that she acted "intentionally, knowingly, recklessly, or with criminal negligence." A person commits the offense of endangering a child if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical, or mental impairment." TEX. PENAL CODE ANN. § 22.041(c) (West 2011). The Texas Court of Criminal Appeals has held "imminent" means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); *see also Rodriguez v. State*, 137 S.W.3d 758 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding danger was "imminent" in child endangerment case where defendant drove under the influence with children as passengers).

In support of her argument, Mayberry points out her son "did much driving under her tutelage." She also allowed him to drive across the street to the grocery store, to basketball practice, to take friends home, "and many other places." Mayberry also apparently allowed him,

on previous occasions, to drive with other children in the car. She allowed him to drive the car to San Marcos with her supervision. Mayberry even allowed her son to drive at night. Mayberry contends that in all the times she allowed him to drive, with or without her, he never received a ticket, never damaged the car, and she never received any complaints about his driving. Accordingly, Mayberry asserts that her offense, at most, was allowing her son to drive without a license. Mayberry seems to contend that without evidence she knew her son would drive recklessly or negligently, she was not subject to a conviction for child endangerment. We disagree.

The evidence, when viewed in the light most favorable to the verdict, established that Mayberry allowed a fifteen-year-old, unlicensed driver to drive a station wagon, at night, without adult supervision. She allowed that fifteen-year-old, unlicensed driver to drive around, at night, unsupervised with first six, and then eight, children. Moreover, she allowed this knowing that not all of these children would be able to sit safely in the vehicle, requiring that at least some of them travel without seatbelts. There was evidence that on the second trip, she saw all of the children in the vehicle, saw they could not all sit safely on the vehicle seats given their numbers, and advised that some of them could sit in the open cargo compartment in the back. Mayberry allowed her son to leave her house and drive with these children as passengers not once, not twice, but three times. Clearly, Mayberry had no idea where her son was or where he was taking the children, as the officer testified she stated her son "should have been driving around town but he shouldn't have been out there." According to her own testimony, she did not know where all of her children were–in the house or with her fifteen-year-old son.

It is irrelevant that her son had no previous accidents. His previous driving experience is likewise irrelevant. At the moment Mayberry allowed an underage, unlicensed driver to operate

the vehicle at night with more passengers than there were available seats, the danger to the children was imminent. *See Rodriguez*, 137 S.W.3d at 761 (holding rational fact finder could have found appellant placed children in imminent danger where officer testified he could not rule out alcohol consumption as contributing factor to car accident, even though other driver failed to yield right of way; alcohol impairment could have caused appellant to react more slowly). Moreover, the evidence shows Mayberry's actions in giving her son the car keys and allowing him to drive with improperly seated children was intentional, or at least reckless. Mayberry herself saw there was insufficient room in the car for all of the children, and specifically told them to sit in the open cargo space.

Considering this evidence within the *Jackson v. Virginia* standard, we hold the jury could have found Mayberry intentionally, knowingly, recklessly, or with criminal intent placed the children in imminent danger of death, bodily injury, or physical impairment. *See* 443 U.S. at 319; TEX. PENAL CODE ANN. § 22.041(c). There was conflicting evidence, but it was within the province of the jury to resolve the conflicts, weigh the evidence, and draw reasonable inferences. *Jackson*, 443 U.S. at 319. We hold the jury's inferences were reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *See Clayton*, 235 S.W.3d at 778.

The dissent points out that "[t]he determination of whether a child is in imminent danger is always a fact-intensive exercise." Dissenting opinion at *3. We wholly agree with this assertion. However, the dissent then ignores the applicable standard, which places fact finding within the province of the jury, allowing it to draw reasonable inferences from the basic facts and make an ultimate determination with regard to whether the danger to the children was imminent. *See Jackson*, 443 U.S. at 319. Our duty is not to act as a thirteenth juror, but merely to determine

whether the jury's inferences are reasonable based on the combined force of the evidence–both direct and circumstantial–when viewed in the light most favorable to the jury's verdict. *Id*. Given the combined force of the evidence in this case, any rational fact finder could have found Mayberry placed the children in imminent danger of bodily injury beyond a reasonable doubt. *See Rodriguez*, 137 S.W.3d at 761 (holding rational fact finder could have found appellant placed children in imminent danger where officer testified he could not rule out alcohol consumption as contributing factor to car accident, even though other driver failed to yield right of way; alcohol impairment could have caused appellant to react more slowly).  Certainly, the evidence establishing the driver's lack of experience given his age, his unlicensed status, and Mayberry's decision to allow unbelted children to travel with such a driver was evidence from which the jury could have inferred imminent danger–especially when combined with the testimony that Mayberry's son was driving one hundred miles an hour at the time of the accident, suggesting he was not the safe driver Mayberry claimed he was and that she was aware of this. Given the standard of review, we cannot say such an inference by the jury was unreasonable.

### CONCLUSION

Based on the foregoing, we overrule Mayberry's issue and affirm the trial court's judgment.

Marialyn Barnard, Justice

Publish