NO. 07-11-00183-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 21, 2012

RONALD WAYNE CARRINGTON, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 21,101-B; HONORABLE JOHN B. BOARD, JUDGE

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Ronald Wayne Carrington, was convicted of robbery[1] and sentenced to confinement for a term of seven years and assessed a fine of $5,000, with the term of confinement being suspended and appellant being placed on probation for seven years. Appellant appeals, contending that the evidence was insufficient to support the jury's verdict. We disagree and affirm the conviction.

---

[1] See TEX. PENAL CODE ANN. § 29.02(a)(2) (West 2011).

Factual Background

On November 11, 2009, appellant entered a Wal-Mart store in Amarillo. While at the store, appellant was observed by a Wal-Mart loss prevention officer, Roy Shannon Burnett, in the automotive section placing two items in his coat pocket. As Burnett continued to observe appellant, appellant approached another shelf of automotive products and placed a taillight assembly kit in his coat pocket. Appellant then appeared to be attempting to quickly leave. Burnett continued to follow appellant and requested assistance at the general merchandise door, as this appeared to be where appellant was heading.

Wal-Mart supervisor, Shannon Rowell, responded to Burnett's call for assistance. As appellant approached the exit door, and after he had passed the electronic sensor area,[2] Burnett was able to position himself in front of appellant. Burnett held his hand out to stop appellant and advised appellant that he was a loss prevention officer and needed the merchandise back. As this interaction commenced, Rowell approached appellant from the side.

Burnett testified that, when confronted with his request to return to the store and deliver the merchandise, appellant said, "[H]ell, no, I'm not going anywhere," and he started pushing Burnett. Burnett further testified that as appellant was attempting to push him outside the store, appellant stated, "I have a knife and I'll use it." As appellant was attempting to push Burnett out the door, Burnett grabbed appellant's jacket.

---

[2] Testimony revealed that Wal-Mart considers this the last opportunity to turn around and attempt to pay for the merchandise.

Rowell, who was attempting to assist Burnett, also testified about appellant's actions in pushing Burnett and the verbal threat to use a knife. At this time, Burnett advised Rowell to help him take appellant down to the ground.

Burnett and Rowell were able to get appellant on the ground face first. Burnett was on appellant's back. Burnett testified that he was attempting to hold appellant down to keep him from being able to reach his pocket where any knife might be located. Both Burnett and Rowell testified that the statement by appellant regarding the knife frightened them. Specifically, Burnett testified he was afraid he was going to be stabbed. Eventually, appellant was subdued and taken to the security office at Wal-Mart. In appellant's pocket, there was a knife, pictures of which were introduced at trial. The items that Burnett observed being placed in appellant's coat pocket were retrieved at the scene of the arrest.

Appellant was taken into police custody by Officer Ernest McDonald of the Amarillo PD. It was Officer McDonald who found the knife in question, and, during trial, he testified that this particular knife was capable of causing serious bodily injury or death.

Appellant testified at trial. Appellant testified that he was at the Wal-Mart because he had brought a friend, Heidi, to the store. He stated he was trying to leave the store in a hurry because he realized he did not have his car keys and he was afraid Heidi was stealing his car. According to appellant, as he went out the front doors two men approached him and took him down to the ground where he was punched and

3

kicked.  Appellant denied ever mentioning a knife to anyone, much less threatening anyone with the knife.  Heidi did not testify at the trial.

After hearing the evidence, the jury convicted appellant of robbery.  After the punishment evidence was received the jury returned a verdict of seven years confinement and a $5,000 fine.  However, the term of confinement was suspended and appellant was placed on community supervision for seven years.  Appellant has perfected his appeal and brings a single issue before this Court.

Appellant contends that the evidence is insufficient to sustain the jury's verdict.  Specifically, appellant contends that there is insufficient evidence to show that he intentionally or knowingly placed another in fear of imminent bodily injury or death.  We disagree with appellant and will affirm the conviction.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).  "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction."  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson."  Id.

When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See id. at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis

To prove a charge of robbery as alleged in the indictment, the State was required to prove that 1) appellant, 2) on the date alleged, 3) while in the course of committing theft, 4) and with intent to obtain and maintain control of property, 5) intentionally and knowingly, 6) threatened and placed Burnett in fear of imminent bodily injury and death. See TEX. PENAL CODE ANN. § 29.02(a)(2).[3] Appellant's issue specifically zeroes in on the last of the elements, whether he threatened and placed Burnett in fear of imminent bodily injury and death.

Appellant's contention is that, immediately after allegedly making the statement that "I have a knife and I'll use it," appellant was taken to the ground. Further, appellant was never able to reach into his pocket for the knife or able to pull the knife out and display the same. Because of this fact scenario, appellant insists Devine v. State, 786 S.W.2d 268 (Tex.Crim.App. 1989) (en banc), controls our disposition of this case. In

---

[3] Further reference to the Texas Penal Code will be by reference to "§ ____" or "section ___."

5

<u>Devine</u>, the victim was the former husband of the defendant. After the divorce, Devine began to extort money out of her ex-husband by threatening to kill or injure him. <u>Id</u>. at 269. This pattern of extortion continued from 1983 until early 1985, when the victim finally contacted the police. <u>Id</u>. The police affixed a microphone to the victim, and he met with Devine, purportedly to give her the payment requested. <u>Id</u>. At the final meeting, Devine produced no weapon nor did she take any overt action. <u>Id</u>.

The thrust of the Court of Criminal Appeal's opinion focused on whether the threat was of imminent bodily injury. <u>Id</u>. at 270. The court construed the "imminent bodily injury" element of section 29.02(a)(2) to require a present, not future, threat. <u>Id</u>. Because the court could not ascertain any threat other than a threat of future action, the cause was reversed. <u>Id</u>. at 270–71.

We disagree with appellant's application of the <u>Devine</u> case to the facts before us. Specifically, we are not dealing with future threats, as was the situation in <u>Devine</u>. <u>Id</u>. Rather, we are dealing with a present statement of intent. The remaining question then is, whether appellant's threat, "I have a knife and I'll use it," is sufficient to place Burnett in fear of imminent bodily injury or death. Appellant contends that it was not so even if he did utter the threat because he was immediately taken to the ground.

It is axiomatic in Texas jurisprudence that the fear a victim feels must arise from the conduct of the appellant rather than the mere temperamental timidity of the victim. <u>Id</u>. at 271 (citing <u>Cranford v. State</u>, 377 S.W.2d 957, 959 (Tex.Crim.App. 1964)). What facts are present in this case that might supply that conduct? First, appellant's initial reaction to Burnett's request to return to the store and return the items was to push

6

Burnett out onto the sidewalk while stating, "[Hell] no, I'm not going anywhere." This was immediately followed by the knife statement. At the time the knife statement was made, appellant had his hands free and was standing right in front of Burnett. Further, even after Burnett and Rowell took appellant to the ground, appellant continued to resist attempts to cuff him. We note that, in <u>Devine</u>, the Court of Criminal Appeals stated that there was nothing in the record about the defendant carrying a gun on the occasion in question, that she made no threatening movements and did not tell the victim that she was carrying a gun. <u>Id</u>. Here, appellant made threatening statements while exhibiting aggression and was, in fact, found to be carrying a knife. <u>Devine</u> simply does not control our disposition of this matter.

This case is more similar to the case of <u>Williams v. State</u>, 827 S.W.2d 614, 617 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In <u>Williams</u>, the defendant took a beer from a convenience store cooler and stood in front of the victim, who was counting receipts at the change of shift. While looking at the victim, the defendant said "Put the money in the towel; and I'm serious." <u>Id</u>. at 615. The victim asked the defendant if he was sure of what he was saying. <u>Id</u>. This exchange was repeated, and the defendant then giggled and ran out of the store with the beer giggling and laughing. <u>Id</u>. In addressing the issue of whether the proof was sufficient on the issue of placing the victim in fear of imminent bodily injury or death, the Houston court said the defendant's action was intensely and immediately focused on the victim. Id. at 617. Such is the case before us. Appellant was focused on going by Burnett and, in an effort to do this, he pushed Burnett and threatened him by saying he had a knife and would use it. It was Burnett's actions that prevented appellant from accessing the knife. As Burnett

testified, he grabbed appellant and took him down because he was in fear that, if he did not do so, he would be stabbed.  Under the facts before us, the jury acted reasonably in finding appellant guilty of robbery.  See Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 912.

Appellant testified that he said nothing about a knife.  Further, appellant contends that he was not trying to leave the store without paying but was only trying to make sure his vehicle had not been taken.  Finally, appellant contends that he was taken down without warning and then punched and kicked while on the ground.  Cross-examination of appellant revealed that he did not discuss the possible theft of his vehicle with the officer who transported him.  Further, appellant never mentioned being punched and kicked to the transporting officer.  The jury observed appellant's testimony and heard the cross-examination.  It was up to the jury to make the determination of credibility of the witnesses and to resolve any conflicts in the testimony.  See Brooks, 323 S.W.3d at 899.  We will not reweigh the evidence or sit as a thirteenth juror.  Johnson v. State, 571 S.W.2d 170, 173 (Tex.Crim.App.1978).  Accordingly, appellant's sole issue is overruled.

Conclusion

Having overruled appellant's single issue, we affirm the trial court's judgment.


Mackey K. Hancock
Justice

Do not publish.


8