**Opinion filed November 16, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00252-CR

_____

## MARCOS BARRAZA BARRERA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR40197**

## M E M O R A N D U M   O P I N I O N

The jury convicted Marcos Barraza Barrera of aggravated assault with a deadly weapon: a knife. He pleaded true to a single enhancement, and the trial court imposed a sentence of fifteen years and no fine. In a single issue on appeal, Appellant contends that the evidence is insufficient to prove that he threatened David Vazquez with a deadly weapon. We affirm.

David Vazquez and Gary Sanchez were cousins and neighbors. David owned a trucking company and used his land to store and maintain eighteen-wheeler trucks.

On the date of the alleged offense, one of David's employees turned too tightly onto David's land, and hit and damaged the fence that separated David and Gary's property.

That evening, David talked to Gary about the damaged fence and told Gary that he would repair it. Later, when Gary's wife, Nancy, arrived home from work, David also talked with Nancy about the fence. Nancy was upset after her conversation with David because he insisted that the fence was currently on his property and that he would move it back to the Sanchez property when he repaired it. She called her brother, Appellant, to tell him what had happened. Appellant told her that he would come look at the fence.

The evidence shows that, when Appellant arrived at the property to look at the fence, he first looked at it from the Sanchez side of the property. He motioned for David to come to the fence so that he could talk to him about it. Their conversation soon escalated into an argument. Appellant does not dispute that the two were yelling and cussing. However, at trial, seven witnesses gave various accounts as to whether Appellant had or had a knife or used a knife during the argument.

No one ever recovered a knife. The responding deputy understood that the knife "had left the scene with the actor," and he did not search for it; the case investigator did not obtain a search warrant because "[t]he scene had already been cleared by responding officers." Therefore, witness testimony was the only evidence for the jury to consider.

The State presented five witnesses who were present during the argument: Gary; David; David's employee, Martin Fragoso; David's wife, Marisela Ulate; and Marisela's daughter, Ashley Ulate. Appellant presented two additional witnesses: Nancy and Appellant. The witnesses' accounts differed with respect to three factual

2

issues: (1) whether there was a knife shown or a threat made at all; (2) if there was a knife, what it looked like; and (3) if there was a knife, what Appellant did with it.

The first contested fact was whether Appellant had a knife at all. Except for Gary, all of the State's witnesses stated that they were certain they saw Appellant use a knife. David, Marisela, Ashley, and Martin also testified that, as Appellant came toward David with the knife, he threatened to cut or slit David's throat.

Gary testified that he never saw a knife, "[j]ust two grown men arguing." Appellant testified that he did not have a knife. Appellant further testified that, at some point during the argument, he pulled a set of keys from his pocket. The keys consisted of a black car key and two shiny house keys. Nancy testified that the set of keys was the only thing that Appellant handed her.

Among those who testified that Appellant did have a knife, there was conflicting testimony as to what the knife looked like. In addition to his testimony in court, David gave two separate statements to the police: a statement to the responding deputy and a statement two days later to the case investigator. David told the deputy that the knife was black and silver; he told the investigator that it was black and silver with stripes; and he gave testimony at trial that the knife was white. Martin remembered only that the knife had a black handle. Marisela described the knife as "black and silver with holes in it. Lastly, Ashley testified that the knife was black and chrome but, on cross-examination, also acknowledged that it "might have" been a set of keys. David, Martin, and Ashley recalled that the knife was a folding pocketknife.

The witnesses also gave differing accounts as to what Appellant did with the knife during the argument. In his statement to the case investigator, David stated that Appellant dropped the knife but then picked it up and ran at him with it; on direct examination, he did not mention that Appellant first dropped the knife. On

direct examination, David said that Appellant threw the knife toward the Sanchez property after he stopped chasing David; he did not mention this fact either to the responding deputy or to the case investigator. Finally, on redirect examination, David explained that Appellant first dropped the knife after he had flipped it open, picked it up, and "went at" David. Ultimately, he threw it toward the Sanchez house. Martin and Marisela both testified that Appellant dropped the knife, picked it up, and began to chase after David. Marisela testified that, when Appellant quit chasing David, he gave the knife to Nancy. Martin could not remember what Appellant did with the knife after he quit chasing David; Ashley testified that she did not see Appellant put the knife away.

Finally, David's account as to whether Appellant pulled the knife out before or after crossing onto David's property differed between his statement to the deputy and his testimony at trial. He also offered varying accounts as to how far into his property Appellant chased him. He told the deputy, and testified at trial, that he just "jumped" back. He told the investigator that Appellant ran "100 yards" into his property. To the contrary, Gary testified that Appellant never crossed onto David's property. Additionally, Appellant denied crossing onto David's property.

Although Appellant had driven his own vehicle to the scene, after the argument was over, he left with his stepson in his stepson's vehicle. Several hours later, when Nancy told Appellant that the police were investigating the incident, he turned himself in.

The State tried Appellant for "intentionally and knowingly threaten[ing] [David] with imminent bodily injury" while using or exhibiting a "deadly weapon . . . during the commission of the said assault." *See* TEX. PENAL CODE ANN. § 22.02 (West 2011). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(17)(B) (West

4

Supp. 2016). "A knife is not a deadly weapon per se." *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). We consider the following factors to determine whether a knife is being used as a deadly weapon: "size, shape and sharpness, the manner of its use, or intended use and its capacity to produce death or serious bodily injury." *Id.* at 294. If the knife did not cause serious bodily injury or death, the evidence must show that the actor intended to use the knife in a manner capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The jury may consider all the circumstances and facts of the case to determine whether the weapon used was a deadly weapon. *See id.*

The State also had the burden to show that Appellant threatened David with "imminent" bodily injury. PENAL § 22.02. The Court of Criminal Appeals has stated that imminence means "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012) (quoting *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989)).

Appellant now challenges the sufficiency of the evidence. Because no knife was produced at trial, the jury relied only on witnesses' testimony to convict Appellant. Appellant maintains that the testimony was full of contradictions, causing uncertainty that cannot be the basis for proving the deadly weapon element beyond a reasonable doubt.

The State responds that it is up to the jury alone to determine witnesses' credibility and that only the jury can resolve conflicts in the evidence. In this case, the jury resolved the inconsistent statements about the knife blade and color, and they apparently believed that Appellant used the knife during the offense. Therefore, argues the State, when we defer to the jury's determinations, the evidence is legally

5

sufficient beyond a reasonable doubt to support Appellant's conviction for aggravated assault with a deadly weapon.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, we examine all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As the sole judge of the credibility of the witnesses, the jury is free to accept or reject any or all of a witness's testimony, and we defer to the jury to resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences to reach ultimate facts. *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

We must conclude from our review of the record that there is sufficient evidence from which the jury could have determined beyond a reasonable doubt that Appellant used a knife to threaten David with imminent bodily harm. Four different witnesses confirmed that they saw Appellant pull a knife from his pocket. With respect to the witnesses' varying descriptions of the knife, we defer to the jury's resolution of the conflicting testimony. *See Brooks*, 323 S.W.3d at 899–900. Each of those witnesses also confirmed that Appellant threatened to cut or slit David's throat as he chased David. Although Appellant, his sister, and her husband testified to a different version of events, the jury, as trier of fact, was the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *See Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Id.*

6

We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally or knowingly threatened David with imminent bodily injury while using or exhibiting a deadly weapon. We overrule Appellant's single issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


November 16, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7