02-11-040 & 041-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00040-CR

NO. 02-11-00041-CR

 

 


 
 
 Frankie Lee Watson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 396th
District Court OF Tarrant
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
Frankie Lee Watson appeals his two convictions for aggravated robbery with a
deadly weapon,[2]
contending in three issues that the evidence is insufficient to sustain one of
the convictions, that the trial court improperly commented on his right to not
testify, and that the trial court abused its discretion by sustaining the State’s
objection to his proposed demonstration during closing argument.  We affirm.

Background
Facts

          Pedro
Hernandez is the manager of a 99 Cent Only store in Fort Worth.  According to
Hernandez, the store has a problem with shoplifters.  One afternoon in March
2010, appellant stole several items from the store by stuffing them into his zipped
green jacket and leaving the store without paying for them.[3] 
Hernandez followed appellant outside and demanded, “[G]ive me my stuff.” 
Appellant denied the theft and continued to walk away from the store. 
Hernandez kept following him and insisted that appellant return the merchandise
or Hernandez would call the police.  Appellant again denied having anything,
but when Hernandez pulled out a cellular telephone and threatened to call the
police, appellant took a box of soap from his jacket and threw it on the
ground.  Hernandez told appellant, “[T]his is not everything.  I have called
the police.”  Appellant then withdrew some packages of socks from his jacket
and tossed them on the ground too.

          While
Hernandez remained on the phone with the police, appellant approached a fence
and began climbing it, but Hernandez pulled him off it.  Hernandez testified
that when appellant landed on his feet on the ground, he spun around, said,
“[L]et me go,” and with an open knife in his right hand, made a sweeping motion
in front of Hernandez’s face, who stood four or five feet away from him.  Hernandez
grabbed an empty beer bottle off of the ground to defend himself and said,
“[I]f you’re going to hurt me, I’m going to hurt you.”  But appellant started
running away again.  Appellant ran onto a golf course, and he was throwing
clothes and “more stuff” that he had taken from the store on the ground as he
ran.  He reached another fence and began to climb it.  Again, Hernandez yanked
him down, and again, appellant swung his knife at Hernandez.  Hernandez was
closer to appellant this time, and he later testified that he had been afraid
that appellant could cause him bodily injury or death.  Thus, Hernandez continued
following appellant only from a distance.[4]

          Appellant
eventually ran to a nearby Goodwill parking lot that is down the street from
the 99 Cent Only store.  The Goodwill store was having a grand opening, so
several cars were there.  Appellant jumped into the back of a truck, but
Hernandez warned the driver that a thief was in the truck bed.  The driver
immediately stopped the truck, and appellant jumped to the ground and continued
to run.  He attempted to jump into the back of another truck, but the driver
sped away.  Next, he went to a parked vehicle whose occupants, a husband and
wife, were exiting.  The driver, Forrest Tucker, began opening his door when
appellant yanked it fully open and reached into the vehicle toward the keys, which
were still in the ignition switch.  Tucker shoved appellant away, but
appellant, pointing the knife at Tucker’s side near his ribs, commanded, “[D]rive
or I’ll kill you.”[5]

          At
trial, Tucker testified that he was “[e]xtremely scared and extremely angry,”
thinking that appellant was going to hurt or kill him and his wife.  When asked
if he felt threatened by appellant, Tucker responded, “Absolutely.”  After appellant
pushed Tucker further into the vehicle, Tucker’s wife reached over from the
passenger seat and hit appellant around the groin with her cane.  Tucker then
pushed appellant away from the car, slammed the door shut, and locked the
vehicle.

          Appellant
began walking away from the parking lot as police officers arrived.  Hernandez
waved the police toward appellant.  Appellant threw his knife under a nearby
car, and as an officer approached him, he, without any prompting, told the
officer, “[H]ey, it’s under 50 bucks.  It’s just a ticket.  Just write me a
ticket and let me go.”  The officer detained appellant in his patrol car while
Hernandez informed the police what had happened and where appellant had
discarded the knife, which the officers retrieved.

          When
the police searched appellant, they found more items from the 99 Cent Only store. 
Hernandez printed a receipt recording all of the items that the police had
delivered to him after appellant was in custody.  Hernandez testified that he
found more items taken from the store, which he valued at about $17, after he
had printed the receipt admitted as State’s Exhibit 19, which listed a total
price for the items that the police had collected of $27.06.  Appellant later
admitted to a police officer that the knife found by the police belonged to
him.

          The
State charged appellant through two indictments (one naming Hernandez as a
victim, and the other naming Tucker) with aggravated robbery with a deadly weapon,
to which he pled not guilty.  The jury found him guilty of both charges, and
after he pled true to the indictments’ enhancement paragraphs, the trial court
sentenced him to fifty years’ confinement on each charge, with the sentences running
concurrently.  Appellant brought these appeals.

Evidentiary
Sufficiency

In
his first issue, appellant contends that the evidence is insufficient to show
that he threatened bodily injury to Hernandez.  In our due-process review of
the sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Isassi v. State, 330 S.W.3d 633, 638 (Tex. Crim.
App. 2010).  This standard gives full play to the responsibility of the trier
of fact to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

The
State may obtain a conviction for aggravated robbery by proving that  a person,
in the course of committing theft and with the intent to obtain or maintain
control of property, intentionally or knowingly threatened or placed another in
fear of imminent bodily injury[[6]]
or death and used or exhibited a deadly weapon.  Tex. Penal Code Ann. §§
29.02(a)(2), .03(a)(2) (West 2011); see Tweedy v. State, 645 S.W.2d
922, 924 (Tex. App.—Fort Worth 1983, no pet.); see also Williams v. State,
886 S.W.2d 495, 497 (Tex. App.—Fort Worth 1994, no pet.) (stating that “[t]hreatening
or placing the complainant in fear is an essential element” of robbery); Williams
v. State, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d)
(“In order to prove the offense of robbery, the accused must have made actual
or threatened overtures of violence to the person of another, such that the
threatened or injured party was put in fear.”).

          Hernandez
testified that after he had first pulled appellant off a fence, appellant
pulled out a knife, opened its blade, swept it in front of Hernandez’s face,
and said, “[L]et me go.”  At that time, Hernandez was within four or five feet
of appellant, and he testified that he felt threatened by appellant’s act,
looked for “something to defend [himself],” and grabbed an empty beer bottle.  Appellant
ran inside a golf course and tried to get over another fence, but Hernandez
pulled him off it as well, and appellant came closer to Hernandez with the
knife.  Hernandez believed that the knife could have caused death if it had cut
him in the right place.  He testified at trial, “That’s when I noticed that he
had intentions . . . .  I mean, that he wanted to get away,
you know.  So I said, okay, I just threw the bottle . . . .  I was not going to
pull him or anything.”  Hernandez said that he was scared when appellant swung
the knife at him.  Officers opined at trial that the knife appellant had swung
at Hernandez was capable of causing serious bodily injury or death.

          Hernandez
indicated at trial that he attempts to prevent thefts from his store because he
wants to “make it a better place.”  But Hernandez also testified that since the
day of appellant’s offense, he responds differently to shoplifters because he “get[s]
cold right away.”

Despite
the direct evidence from Hernandez’s testimony that he was scared and felt
threatened, appellant contends that Hernandez’s actions in continuing to follow
appellant and preventing his escape negate the jury’s finding that Hernandez
feared imminent bodily injury or death.  We agree with the State that
“[i]mplicitly, [a]ppellant’s position is that a shopkeeper’s continued pursuit
of an armed, shoplifting defendant . . . bars a factfinder from accepting the
shopkeeper’s testimony that he was afraid.”

          In
determining whether appellant placed Hernandez in fear of imminent bodily
injury or death, we must consider whether appellant’s actions were of such a nature
that they were likely to induce a person to part with his property against his
will.  See Howard v. State, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011); Devine
v. State, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989).  The fear must arise
from the conduct of the accused rather than the temperamental timidity of the
victim.  Devine, 786 S.W.2d at 271.

          On
an objective level, we are confident that appellant’s exhibition and slashing
motion with the knife a few feet from Hernandez’s face would place a reasonable
person in Hernandez’s circumstances in fear of imminent bodily injury or
death.  See, e.g., Gorham v. State, 985 S.W.2d 694, 697 (Tex. App.—Fort
Worth 1999, pet. ref’d) (holding that the defendant’s jab with a knife toward
the victim’s chest coupled with his explicit request for the victim to back
away or get “cut” while the defendant was stealing cigarettes from a convenience
store was sufficient to support the element that the appellant threatened or
placed the victim in fear of serious bodily injury or death).

          Moreover,
we do not conclude that Hernandez’s decision to follow appellant belies his
testimony that he felt threatened and was scared.  Appellant’s contention that
Hernandez’s actions manifested a lack of fear is similar to an argument that we
resolved in Wilson v. State, No. 02-02-00123-CR, 2003 WL 300692 (Tex.
App.—Fort Worth Feb. 13, 2003, pet. ref’d) (mem. op., not designated for
publication).  Wilson had picked up some beer and had walked out of a
convenience store without paying.  Id. at *1.  The store’s clerk,
Crystal Bonham, ordered Wilson to stop and jumped over a counter to pursue him
when Wilson said, “If you touch me, I’ll fucking shoot you.”  Id. 
Nonetheless, Bonham followed Wilson outside, recorded Wilson’s license plate
number, went back inside, and called the police.  Id.  The police
arrived and talked to Bonham, who was alarmed and emotional.  Id.  In
rejecting Wilson’s evidentiary sufficiency challenge to his robbery conviction,
we stated,

          Wilson contends that Ms. Bonham, by jumping
over the counter, following him outside to obtain the van’s license plate
number, and by directing an obscenity toward him, exhibited a lack of fear
outweighing her trial testimony that she was scared.  Wilson points out that,
after the incident, Ms. Bonham returned inside and calmly picked up fallen beer
cartons from the floor, proceeded to ring up customers, and completed the
remainder of her shift before going home.  In Wilson’s view, this evidence
proves that Ms. Bonham was either never threatened at all or was not placed in
sufficient fear by any threat actually made.

          Ms. Bonham testified, however, that Wilson
threatened to shoot her and caused her to fear for her life.  [An officer]
testified that Ms. Bonham was shaking and trembling when he interviewed her
just minutes after the offense.  He offered his firm opinion that Ms. Bonham
was frightened by Wilson’s threat of violence. An acquaintance of Wilson’s
informed the jury that Wilson admitted to threatening Ms. Bonham to ease his getaway
with the stolen beer. . . .  Finally, Ms. Bonham testified that her
actions immediately following the threat sprang from her desire to see the perpetrators
caught and her knowledge that, if she failed to take action, the police would
likely be unable to apprehend them.

Id. at
*2–3.  Similarly to Wilson, other courts have affirmed robbery
convictions despite victims’ efforts to follow or apprehend the defendant.  See,
e.g., Moralez v. State, No. 04-06-00033-CR, 2006 WL 3085714, at *3 (Tex.
App.—San Antonio Nov. 1, 2006, no pet.) (mem. op., not designated for
publication) (“Moralez argues that White’s actions show that White did not fear
imminent harm.  However, White’s conduct in pursuing Moralez and attempting to
prevent his escape does not necessarily show that she was not afraid.”).  Like
in Wilson and Moralez, we hold that Hernandez’s actions in
pursing appellant do not preclude the jury’s determination that Hernandez was
threatened or placed in fear of imminent bodily injury or death when appellant
twice swung a knife at him.

Viewing
the evidence in the light most favorable to appellant’s conviction, we conclude
that the jury could have rationally concluded that appellant intentionally or
knowingly threatened or placed Hernandez in fear of imminent bodily injury or
death.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638; see also Tex. Penal Code Ann. §§ 29.02(a)(2),
.03(a)(2). Because appellant challenges only that element of his conviction
involving Hernandez, we hold that the evidence is sufficient to sustain the
conviction, and we overrule appellant’s first issue.

The
Trial Court’s Comments During Voir Dire

          In
his second issue, appellant contends that the trial court erred by improperly
commenting on his right to not testify.  During voir dire, the following
exchange occurred between defense counsel and a prospective juror: 

          PROSPECTIVE JUROR:  I get it that you don’t
have to . . . prove his innocence, but back to the Fifth Amendment.  I
understand that that’s a right as well, but if someone were innocent, why
wouldn’t they want to tell us?

          [DEFENSE COUNSEL]:  That’s a very --

          PROSPECTIVE JUROR:  Why would you not allow
them?

          [DEFENSE COUNSEL]:  That’s a very good
question.

          PROSPECTIVE JUROR:  I would want to defend myself.

          [DEFENSE COUNSEL]:  I understand.

          PROSPECTIVE JUROR:  And make it verbal and every
other way.

          . . . .

          [DEFENSE COUNSEL]:  . . .  There are a lot of
reasons. . . .  Not everybody is accustom[ed] to talking in public. . . .

          . . . .

          [DEFENSE COUNSEL]:  . . .  I talk in public.  I
do this for a living.  I’m kind of used to getting up in front of a bunch of
people making a fool of myself talking.  Not everybody is like that.

          Okay.  There could be other reasons.  I stutter
would be a good reason.  Okay.  Or maybe I’m guilty and don’t want to admit
it.  Is that a reason possibly?

          PROSPECTIVE JUROR:  Yes.

          [DEFENSE COUNSEL]:  Or how about, my lawyer tells
me that they haven’t proven each and every element of the case, and that there’s
no way a jury could find you guilty based upon the crap evidence that they
have.

          . . . .

          [DEFENSE COUNSEL]:  If a person -- if they had
terrible evidence and, you know, a client insists on getting on the witness
stand to testify, he might talk himself into prison.  Can you -- because it’s
a rule, I know most of you don’t believe this, but if my client were to get on
the witness stand to testify, I would be required to stand up and say, Judge,
he’s lying.  Time out.  My client’s lying because --

          PROSPECTIVE JUROR:  Is he talking about this
case or what case are you talking about?

          [DEFENSE COUNSEL]:  In general.

          . . . .

          [DEFENSE COUNSEL]:  . . .  So there are lots of
reasons why somebody might not testify.  Okay.  Not just because somebody is
guilty.  Okay.  [Emphasis added.]

Appellant’s
issue arises from the following comment of the trial court, which was
presumably made in response to the above colloquy:

          You know, Ms. Roberts, I was thinking about
your question about if somebody was not guilty, why wouldn’t they get up
there and tell us, and I was trying to think of an answer.  The only answer
that I could come up with is because our constitution says he can.  [Emphasis
added.]

Appellant
argues that this comment “inferred that there was no good reason a defendant
would not testify if he was actually innocent” and therefore allegedly violated
his privilege against self-incrimination.  See U.S. Const. amend V; Tex.
Const. art I, § 10; see also Bustamante v. State, 48 S.W.3d 761, 764
(Tex. Crim. App. 2001) (“Neither the trial judge nor the prosecutor can comment
on the failure of an accused to testify.  Such a comment violates the privilege
against self-incrimination and the freedom from being compelled to testify . .
. .”) (footnote omitted).  Appellant concedes, however, that he did not object
to the comment; without citing any authority concerning error preservation, he
asks us to address the issue “in the interest of justice.”

          In
general, to preserve a complaint for our review, a party must have presented to
the trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill v. State,
319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not address
the merits of an issue that has not been preserved for appeal.  Wilson v.
State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g). 
Preservation of error is a systemic requirement.  Id. at 473–74; Ford
v. State, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).         Forfeiture
for lack of an objection applies to most comments made by a trial court.  See
Sharp v. State, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986), cert.
denied, 488 U.S. 872 (1988); Madrigal v. State, 347 S.W.3d 809, 815
(Tex. App.—Corpus Christi 2011, pet. ref’d); Wilkerson v. State, 347
S.W.3d 720, 725 (Tex. App.—Houston [14th Dist.] 2011, pet. ref’d).  Forfeiture also
applies to most constitutional errors.  See Fuller v. State, 253
S.W.3d 220, 232 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 904
(2009); Mendez, 138 S.W.3d at 342; Saldano v. State, 70 S.W.3d
873, 888–89 (Tex. Crim. App. 2002).  More specifically, a defendant’s challenge
about the violation of his privilege against self-incrimination must be
preserved by an objection.  See, e.g., Collier v. State, 959
S.W.2d 621, 626 (Tex. Crim. App. 1997), cert. denied, 525 U.S. 929
(1998); Ramirez v. State, 815 S.W.2d 636, 646 (Tex. Crim. App. 1991).

          Preservation
requirements do not apply, however, to rights which are waivable only or to
absolute systemic requirements, the violation of which may still be raised for
the first time on appeal.  State v. Dunbar, 297 S.W.3d 777, 780 (Tex.
Crim. App. 2009).  Systemic requirements—also known as absolute requirements or
prohibitions—are laws that a trial court has a duty to follow even if the
parties wish otherwise.  Mendez, 138 S.W.3d at 340.  “Waivable only”
rights include the right to the assistance of counsel and the right to trial by
jury.  Saldano, 70 S.W.3d at 888.

          Before
(in voir dire) and after (in jury instructions) making the comment at issue,
the trial court, at length, emphasized that a person’s decision to not testify
cannot be considered in evaluating guilt.  It is doubtful that the complained-of
two-sentence statement about why an innocent person may choose to not testify
undermined the trial court’s emphasis in the rest of the trial on protecting
the defendant’s right to remain silent.  And even assuming that the comment
could have been interpreted in a negative fashion by the prospective jurors, the
trial court also included the following instruction in the jury charge:

          [D]o not
assume from anything I may have done or said during the trial that I have any
opinion concerning any of the issues in this case.  Except for the instructions
to you on the law, you should disregard anything I may have said during the
trial in arriving at your own findings as to the facts.

 

On
appeal, we generally presume that the jury followed the trial court’s
instructions in the manner presented.  Thrift v. State, 176 S.W.3d 221,
224 (Tex. Crim. App. 2005); Walker v. State, 300 S.W.3d 836, 850 (Tex.
App.—Fort Worth 2009, pet. ref’d).  Appellant has not directed us to anything
in the record showing that the jury considered his decision to not testify as a
factor against him.  Cf. Colburn v. State, 966 S.W.2d 511, 520
(Tex. Crim. App. 1998) (presuming that the jury did not consider parole in
reaching a punishment verdict when the trial court instructed it not to).

          For
all of these reasons, we conclude that the trial court’s challenged comment in
this case does not rise to the level of a comment for which no objection is
required to preserve error.  Cf. Blue v. State, 41 S.W.3d 129, 132 (Tex.
Crim. App. 2000) (plurality op.) (“The comments of the trial judge, which
tainted appellant’s presumption of innocence in front of the venire, were
fundamental error of constitutional dimension and required no objection.”); see
also Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001)
(distinguishing Blue and overruling a point about a trial court’s
comments because they did not “bear on the presumption of innocence or vitiate
the impartiality of the jury”); Ganther v. State, 187 S.W.3d 641, 650
(Tex. App.—Houston 2006, pet. ref’d) (holding similarly).  Because we hold that
the trial court’s statement did not fall into the categories for which no
objection is required, we conclude that appellant was required to object to the
statement in order to preserve it for our review.  See Tex. R. App. P.
33.1(a); Dunbar, 297 S.W.3d at 780.  Appellant did not object, so we hold
that he forfeited the complaint, and we overrule his second issue.

Appellant’s
Closing Argument

          In
his third issue, appellant contends that the trial court erred by precluding
his use of a demonstration during closing argument.[7] 
In the closing argument, appellant’s counsel attempted to undermine the State’s
case concerning Hernandez by demonstrating how unwieldy it would be for
appellant to swing a knife at Hernandez while encumbered with all of the items
that, according to Hernandez, appellant had stolen.  After informing the jury,
“[T]his is not the evidence and what I say is not the evidence.  This is just a
demonstration to get you to imagine,” appellant’s attorney apparently intended
to stuff a jacket with items allegedly matching the stolen items listed on the receipt
that Hernandez had printed.  The prosecutor objected, arguing, “[T]his is not
in evidence.  It’s not even a demonstrative aid, and it’s inappropriate for
closing argument.”  The trial court sustained the State’s objection.  On
appeal, appellant contends that the court abused its discretion by sustaining
the objection and thus disallowing the demonstration; he argues that the
demonstration would have highlighted the fact that it was “highly questionable”
whether appellant had threatened Hernandez.

          We
review a trial court’s rulings on objections to jury arguments under an abuse
of discretion standard.  See Lemon v. State, 298 S.W.3d 705, 707 (Tex.
App.—San Antonio 2009, pet. ref’d).  A trial court has broad discretion
in controlling the scope of closing argument, but it may not prevent defense
counsel from making a point essential to the defense.  Lemos v. State,
130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.).

          To
summarize the evidence that has been admitted, an attorney may, at the court’s
discretion, use visual aids in closing argument.  See Jarnigan v. State,
57 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d).  But
closing argument cannot be used to inject new facts into the record.  See
Freeman v. State, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011); Sparkman
v. State, 968 S.W.2d 373, 380–81 (Tex. App.—Tyler 1997, pet. ref’d) (op. on
reh’g) (“Defendant’s Exhibit # 4 . . . cannot be said to meet the requirements
of proper jury argument because [it] include[s] references to facts which were
not in evidence.”), cert. denied, 523 U.S. 1085 (1998); see also
Cowan v. State, No. 01-89-00068-CR, 1990 WL 113630, at *8 (Tex.
App.—Houston [1st Dist.] Aug. 9, 1990, pet. ref’d) (not designated for
publication) (ruling that the prosecutor’s jury argument demonstration of having
a deputy wear a stocking to illustrate the ability to discern the identity of
an attacker wearing a stocking was not supported by the record because there
was no evidence of how the attacker wore the stocking or the color of the
stocking).

          The
record demonstrates that appellant’s proposed demonstration would have injected
new facts into the record.  First, appellant’s counsel recognized at trial that
the jacket to be used for the demonstration was only “somewhat similar” to the green
jacket that appellant used in the robberies.  Second, appellant did not
establish that the products that he intended to stuff into the jacket had the
same physical characteristics as the products that, according to Hernandez,
appellant had stolen.  Appellant’s attorney had obtained the items that he
intended to stuff into the jacket by referring to the receipt from the 99 Cent
Only store that was admitted as State’s Exhibit 19.  But that receipt does not
describe the physical characteristics or the packaging of the items that it
lists.  As the trial court observed, there was no testimony that the items to
be used in the demonstration had the same bulkiness as the items represented by
the receipt.[8] 
The parties did not introduce the items that appellant had taken from the store
into evidence, nor did the parties present photographs of those items.  And
from this record, we have no way of knowing whether appellant’s counsel
researched the products to determine that they had not changed packaging since
the time of the theft.  Thus, because the proposed demonstration would have
introduced new, unsubstantiated facts concerning the physical characteristics of
the items that appellant stole, and because the bulkiness of those items was
the very reason for the demonstration, we hold that the trial court did not
abuse its discretion by excluding the demonstration.  See Lemon, 298
S.W.3d at 707.  We overrule appellant’s third issue.

Conclusion

          Having
overruled all of appellant’s issues, we affirm the trial court’s judgments.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and WALKER, JJ.

 

DAUPHINOT,
J., concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 12, 2012









[1]See Tex. R. App. P. 47.4.





[2]See
Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).





[3]On
appeal, appellant admits that he “had indeed taken some items from the store.”





[4]At
trial, Hernandez testified, “I was keeping my distance.  I don’t want to get
close to him, you know, because, like I said, the second time he came close to
me with the knife.”





[5]In a statement to the police, Tucker
surmised that the knife blade was closed when appellant stuck it to his side
because Tucker did not feel a point.  But at trial, Tucker expressed his belief
that the blade was open.





[6]The
penal code defines “bodily injury” as “physical pain, illness, or any
impairment of physical condition.”  Tex. Penal Code Ann. § 1.07(a)(8) (West
Supp. 2011).





[7]The
authority cited by appellant in his third issue concerns the admissibility of demonstrative
evidence, not the propriety of demonstrations made by counsel during closing
argument.  See, e.g., Reyna v. State, 797 S.W.2d 189, 193 (Tex.
App.—Corpus Christi 1990, no pet.); Rogers v. State, 756 S.W.2d 332, 336
(Tex. App.—Houston [14th Dist.] 1988, pet. ref’d).





[8]The receipt includes twenty-five items, but
the last item is “Misc Taxable Item,” which appellant’s counsel obviously could
not match without more details.