

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00040-CR
### NO. 02-11-00041-CR

FRANKIE LEE WATSON                                        APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Frankie Lee Watson appeals his two convictions for aggravated robbery with a deadly weapon,[2] contending in three issues that the evidence is insufficient to sustain one of the convictions, that the trial court improperly commented on his right to not testify, and that the trial court abused its discretion

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).

by sustaining the State's objection to his proposed demonstration during closing argument.  We affirm.

## Background Facts

Pedro Hernandez is the manager of a 99 Cent Only store in Fort Worth. According to Hernandez, the store has a problem with shoplifters.  One afternoon in March 2010, appellant stole several items from the store by stuffing them into his zipped green jacket and leaving the store without paying for them.[3] Hernandez followed appellant outside and demanded, "[G]ive me my stuff." Appellant denied the theft and continued to walk away from the store. Hernandez kept following him and insisted that appellant return the merchandise or Hernandez would call the police.  Appellant again denied having anything, but when Hernandez pulled out a cellular telephone and threatened to call the police, appellant took a box of soap from his jacket and threw it on the ground. Hernandez told appellant, "[T]his is not everything.  I have called the police." Appellant then withdrew some packages of socks from his jacket and tossed them on the ground too.

While Hernandez remained on the phone with the police, appellant approached a fence and began climbing it, but Hernandez pulled him off it. Hernandez testified that when appellant landed on his feet on the ground, he spun around, said, "[L]et me go," and with an open knife in his right hand, made a

---

[3]On appeal, appellant admits that he "had indeed taken some items from the store."

2

sweeping motion in front of Hernandez's face, who stood four or five feet away from him. Hernandez grabbed an empty beer bottle off of the ground to defend himself and said, "[I]f you're going to hurt me, I'm going to hurt you." But appellant started running away again. Appellant ran onto a golf course, and he was throwing clothes and "more stuff" that he had taken from the store on the ground as he ran. He reached another fence and began to climb it. Again, Hernandez yanked him down, and again, appellant swung his knife at Hernandez. Hernandez was closer to appellant this time, and he later testified that he had been afraid that appellant could cause him bodily injury or death. Thus, Hernandez continued following appellant only from a distance.[4]

Appellant eventually ran to a nearby Goodwill parking lot that is down the street from the 99 Cent Only store. The Goodwill store was having a grand opening, so several cars were there. Appellant jumped into the back of a truck, but Hernandez warned the driver that a thief was in the truck bed. The driver immediately stopped the truck, and appellant jumped to the ground and continued to run. He attempted to jump into the back of another truck, but the driver sped away. Next, he went to a parked vehicle whose occupants, a husband and wife, were exiting. The driver, Forrest Tucker, began opening his door when appellant yanked it fully open and reached into the vehicle toward the

---

[4]At trial, Hernandez testified, "I was keeping my distance. I don't want to get close to him, you know, because, like I said, the second time he came close to me with the knife."

3

keys, which were still in the ignition switch. Tucker shoved appellant away, but appellant, pointing the knife at Tucker's side near his ribs, commanded, "[D]rive or I'll kill you."[5]

At trial, Tucker testified that he was "[e]xtremely scared and extremely angry," thinking that appellant was going to hurt or kill him and his wife. When asked if he felt threatened by appellant, Tucker responded, "Absolutely." After appellant pushed Tucker further into the vehicle, Tucker's wife reached over from the passenger seat and hit appellant around the groin with her cane. Tucker then pushed appellant away from the car, slammed the door shut, and locked the vehicle.

Appellant began walking away from the parking lot as police officers arrived. Hernandez waved the police toward appellant. Appellant threw his knife under a nearby car, and as an officer approached him, he, without any prompting, told the officer, "[H]ey, it's under 50 bucks. It's just a ticket. Just write me a ticket and let me go." The officer detained appellant in his patrol car while Hernandez informed the police what had happened and where appellant had discarded the knife, which the officers retrieved.

When the police searched appellant, they found more items from the 99 Cent Only store. Hernandez printed a receipt recording all of the items that the

---

[5]In a statement to the police, Tucker surmised that the knife blade was closed when appellant stuck it to his side because Tucker did not feel a point. But at trial, Tucker expressed his belief that the blade was open.

police had delivered to him after appellant was in custody. Hernandez testified that he found more items taken from the store, which he valued at about $17, after he had printed the receipt admitted as State's Exhibit 19, which listed a total price for the items that the police had collected of $27.06. Appellant later admitted to a police officer that the knife found by the police belonged to him.

The State charged appellant through two indictments (one naming Hernandez as a victim, and the other naming Tucker) with aggravated robbery with a deadly weapon, to which he pled not guilty. The jury found him guilty of both charges, and after he pled true to the indictments' enhancement paragraphs, the trial court sentenced him to fifty years' confinement on each charge, with the sentences running concurrently. Appellant brought these appeals.

## Evidentiary Sufficiency

In his first issue, appellant contends that the evidence is insufficient to show that he threatened bodily injury to Hernandez. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

5

basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

The State may obtain a conviction for aggravated robbery by proving that a person, in the course of committing theft and with the intent to obtain or maintain control of property, intentionally or knowingly threatened or placed another in fear of imminent bodily injury[6] or death and used or exhibited a

---

[6]The penal code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2011).

deadly weapon. Tex. Penal Code Ann. §§ 29.02(a)(2), .03(a)(2) (West 2011); *see Tweedy v. State*, 645 S.W.2d 922, 924 (Tex. App.—Fort Worth 1983, no pet.); *see also Williams v. State*, 886 S.W.2d 495, 497 (Tex. App.—Fort Worth 1994, no pet.) (stating that "[t]hreatening or placing the complainant in fear is an essential element" of robbery); *Williams v. State*, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) ("In order to prove the offense of robbery, the accused must have made actual or threatened overtures of violence to the person of another, such that the threatened or injured party was put in fear.").

Hernandez testified that after he had first pulled appellant off a fence, appellant pulled out a knife, opened its blade, swept it in front of Hernandez's face, and said, "[L]et me go." At that time, Hernandez was within four or five feet of appellant, and he testified that he felt threatened by appellant's act, looked for "something to defend [himself]," and grabbed an empty beer bottle. Appellant ran inside a golf course and tried to get over another fence, but Hernandez pulled him off it as well, and appellant came closer to Hernandez with the knife. Hernandez believed that the knife could have caused death if it had cut him in the right place. He testified at trial, "That's when I noticed that he had intentions . . . . I mean, that he wanted to get away, you know. So I said, okay, I just threw the bottle . . . . I was not going to pull him or anything." Hernandez said that he was scared when appellant swung the knife at him. Officers opined

at trial that the knife appellant had swung at Hernandez was capable of causing serious bodily injury or death.

Hernandez indicated at trial that he attempts to prevent thefts from his store because he wants to "make it a better place." But Hernandez also testified that since the day of appellant's offense, he responds differently to shoplifters because he "get[s] cold right away."

Despite the direct evidence from Hernandez's testimony that he was scared and felt threatened, appellant contends that Hernandez's actions in continuing to follow appellant and preventing his escape negate the jury's finding that Hernandez feared imminent bodily injury or death. We agree with the State that "[i]mplicitly, [a]ppellant's position is that a shopkeeper's continued pursuit of an armed, shoplifting defendant . . . bars a factfinder from accepting the shopkeeper's testimony that he was afraid."

In determining whether appellant placed Hernandez in fear of imminent bodily injury or death, we must consider whether appellant's actions were of such a nature that they were likely to induce a person to part with his property against his will. *See Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011); *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). The fear must arise from the conduct of the accused rather than the temperamental timidity of the victim. *Devine*, 786 S.W.2d at 271.

On an objective level, we are confident that appellant's exhibition and slashing motion with the knife a few feet from Hernandez's face would place a

8

reasonable person in Hernandez's circumstances in fear of imminent bodily injury or death. *See, e.g., Gorham v. State*, 985 S.W.2d 694, 697 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that the defendant's jab with a knife toward the victim's chest coupled with his explicit request for the victim to back away or get "cut" while the defendant was stealing cigarettes from a convenience store was sufficient to support the element that the appellant threatened or placed the victim in fear of serious bodily injury or death).

Moreover, we do not conclude that Hernandez's decision to follow appellant belies his testimony that he felt threatened and was scared. Appellant's contention that Hernandez's actions manifested a lack of fear is similar to an argument that we resolved in *Wilson v. State,* No. 02-02-00123-CR, 2003 WL 300692 (Tex. App.—Fort Worth Feb. 13, 2003, pet. ref'd) (mem. op., not designated for publication). Wilson had picked up some beer and had walked out of a convenience store without paying. *Id.* at *1. The store's clerk, Crystal Bonham, ordered Wilson to stop and jumped over a counter to pursue him when Wilson said, "If you touch me, I'll fucking shoot you." *Id.* Nonetheless, Bonham followed Wilson outside, recorded Wilson's license plate number, went back inside, and called the police. *Id.* The police arrived and talked to Bonham, who was alarmed and emotional. *Id.* In rejecting Wilson's evidentiary sufficiency challenge to his robbery conviction, we stated,

> Wilson contends that Ms. Bonham, by jumping over the counter, following him outside to obtain the van's license plate number, and by directing an obscenity toward him, exhibited a lack

9

of fear outweighing her trial testimony that she was scared. Wilson points out that, after the incident, Ms. Bonham returned inside and calmly picked up fallen beer cartons from the floor, proceeded to ring up customers, and completed the remainder of her shift before going home. In Wilson's view, this evidence proves that Ms. Bonham was either never threatened at all or was not placed in sufficient fear by any threat actually made.

Ms. Bonham testified, however, that Wilson threatened to shoot her and caused her to fear for her life. [An officer] testified that Ms. Bonham was shaking and trembling when he interviewed her just minutes after the offense. He offered his firm opinion that Ms. Bonham was frightened by Wilson's threat of violence. An acquaintance of Wilson's informed the jury that Wilson admitted to threatening Ms. Bonham to ease his getaway with the stolen beer. . . . Finally, Ms. Bonham testified that her actions immediately following the threat sprang from her desire to see the perpetrators caught and her knowledge that, if she failed to take action, the police would likely be unable to apprehend them.

Id. at *2–3. Similarly to Wilson, other courts have affirmed robbery convictions despite victims' efforts to follow or apprehend the defendant. See, e.g., Moralez v. State, No. 04-06-00033-CR, 2006 WL 3085714, at *3 (Tex. App.—San Antonio Nov. 1, 2006, no pet.) (mem. op., not designated for publication) ("Moralez argues that White's actions show that White did not fear imminent harm. However, White's conduct in pursuing Moralez and attempting to prevent his escape does not necessarily show that she was not afraid."). Like in Wilson and Moralez, we hold that Hernandez's actions in pursing appellant do not preclude the jury's determination that Hernandez was threatened or placed in fear of imminent bodily injury or death when appellant twice swung a knife at him.

Viewing the evidence in the light most favorable to appellant's conviction, we conclude that the jury could have rationally concluded that appellant

10

intentionally or knowingly threatened or placed Hernandez in fear of imminent bodily injury or death. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638; *see also* Tex. Penal Code Ann. §§ 29.02(a)(2), .03(a)(2). Because appellant challenges only that element of his conviction involving Hernandez, we hold that the evidence is sufficient to sustain the conviction, and we overrule appellant's first issue.

### The Trial Court's Comments During Voir Dire

In his second issue, appellant contends that the trial court erred by improperly commenting on his right to not testify. During voir dire, the following exchange occurred between defense counsel and a prospective juror:

> PROSPECTIVE JUROR: I get it that you don't have to . . . prove his innocence, but back to the Fifth Amendment. I understand that that's a right as well, but if someone were innocent, why wouldn't they want to tell us?
>
> [DEFENSE COUNSEL]: That's a very --
>
> PROSPECTIVE JUROR: Why would you not allow them?
>
> [DEFENSE COUNSEL]: That's a very good question.
>
> PROSPECTIVE JUROR: I would want to defend myself.
>
> [DEFENSE COUNSEL]: I understand.
>
> PROSPECTIVE JUROR: And make it verbal and every other way.
>
> . . . .
>
> [DEFENSE COUNSEL]: . . . There are a lot of reasons. . . . Not everybody is accustom[ed] to talking in public. . . .
>
> . . . .

11

[DEFENSE COUNSEL]: . . . I talk in public. I do this for a living. I'm kind of used to getting up in front of a bunch of people making a fool of myself talking. Not everybody is like that.

Okay. There could be other reasons. I stutter would be a good reason. Okay. *Or maybe I'm guilty and don't want to admit it. Is that a reason possibly?*

*PROSPECTIVE JUROR: Yes.*

[DEFENSE COUNSEL]: Or how about, my lawyer tells me that they haven't proven each and every element of the case, and that there's no way a jury could find you guilty based upon the crap evidence that they have.

. . . .

[DEFENSE COUNSEL]: If a person -- if they had terrible evidence and, you know, a client insists on getting on the witness stand to testify, *he might talk himself into prison. Can you -- because it's a rule, I know most of you don't believe this, but if my client were to get on the witness stand to testify, I would be required to stand up and say, Judge, he's lying.* Time out. My client's lying because --

PROSPECTIVE JUROR: Is he talking about this case or what case are you talking about?

[DEFENSE COUNSEL]: In general.

. . . .

[DEFENSE COUNSEL]: . . . So there are lots of reasons why somebody might not testify. Okay. Not just because somebody is guilty. Okay. [Emphasis added.]

Appellant's issue arises from the following comment of the trial court, which was

presumably made in response to the above colloquy:

You know, Ms. Roberts, I was thinking about your question *about if somebody was not guilty*, why wouldn't they get up there and tell us, and I was trying to think of an answer. The only answer

12

that I could come up with is because our constitution says he can. [Emphasis added.]

Appellant argues that this comment "inferred that there was no good reason a defendant would not testify if he was actually innocent" and therefore allegedly violated his privilege against self-incrimination. *See* U.S. Const. amend V; Tex. Const. art I, § 10; *see also Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001) ("Neither the trial judge nor the prosecutor can comment on the failure of an accused to testify. Such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify . . . .") (footnote omitted). Appellant concedes, however, that he did not object to the comment; without citing any authority concerning error preservation, he asks us to address the issue "in the interest of justice."

In general, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim.

13

App. 2010) (op. on reh'g).  Preservation of error is a systemic requirement.  *Id.* at 473–74; *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).

Forfeiture for lack of an objection applies to most comments made by a trial court.  *See Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988); *Madrigal v. State*, 347 S.W.3d 809, 815 (Tex. App.—Corpus Christi 2011, pet. ref'd); *Wilkerson v. State*, 347 S.W.3d 720, 725 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).  Forfeiture also applies to most constitutional errors.  *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 904 (2009); *Mendez*, 138 S.W.3d at 342; *Saldano v. State*, 70 S.W.3d 873, 888–89 (Tex. Crim. App. 2002).  More specifically, a defendant's challenge about the violation of his privilege against self-incrimination must be preserved by an objection.  *See, e.g.*, *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997), *cert. denied*, 525 U.S. 929 (1998); *Ramirez v. State*, 815 S.W.2d 636, 646 (Tex. Crim. App. 1991).

Preservation requirements do not apply, however, to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal.  *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009).  Systemic requirements—also known as absolute requirements or prohibitions—are laws that a trial court has a duty to follow even if the parties wish otherwise.  *Mendez*, 138 S.W.3d at 340.  "Waivable only" rights include the right to the assistance of counsel and the right to trial by jury.  *Saldano*, 70 S.W.3d at 888.

14

Before (in voir dire) and after (in jury instructions) making the comment at issue, the trial court, at length, emphasized that a person's decision to not testify cannot be considered in evaluating guilt. It is doubtful that the complained-of two-sentence statement about why an innocent person may choose to not testify undermined the trial court's emphasis in the rest of the trial on protecting the defendant's right to remain silent. And even assuming that the comment could have been interpreted in a negative fashion by the prospective jurors, the trial court also included the following instruction in the jury charge:

> [D]o not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case. Except for the instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

On appeal, we generally presume that the jury followed the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd). Appellant has not directed us to anything in the record showing that the jury considered his decision to not testify as a factor against him. *Cf. Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (presuming that the jury did not consider parole in reaching a punishment verdict when the trial court instructed it not to).

For all of these reasons, we conclude that the trial court's challenged comment in this case does not rise to the level of a comment for which no objection is required to preserve error. *Cf. Blue v. State*, 41 S.W.3d 129, 132

15

(Tex. Crim. App. 2000) (plurality op.) ("The comments of the trial judge, which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection."); *see also Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (distinguishing *Blue* and overruling a point about a trial court's comments because they did not "bear on the presumption of innocence or vitiate the impartiality of the jury"); *Ganther v. State*, 187 S.W.3d 641, 650 (Tex. App.—Houston 2006, pet. ref'd) (holding similarly). Because we hold that the trial court's statement did not fall into the categories for which no objection is required, we conclude that appellant was required to object to the statement in order to preserve it for our review. *See* Tex. R. App. P. 33.1(a); *Dunbar*, 297 S.W.3d at 780. Appellant did not object, so we hold that he forfeited the complaint, and we overrule his second issue.

**Appellant's Closing Argument**

In his third issue, appellant contends that the trial court erred by precluding his use of a demonstration during closing argument.[7] In the closing argument, appellant's counsel attempted to undermine the State's case concerning Hernandez by demonstrating how unwieldy it would be for appellant to swing a knife at Hernandez while encumbered with all of the items that, according to

---

[7]The authority cited by appellant in his third issue concerns the admissibility of demonstrative evidence, not the propriety of demonstrations made by counsel during closing argument. *See, e.g., Reyna v. State*, 797 S.W.2d 189, 193 (Tex. App.—Corpus Christi 1990, no pet.); *Rogers v. State*, 756 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

Hernandez, appellant had stolen. After informing the jury, "[T]his is not the evidence and what I say is not the evidence. This is just a demonstration to get you to imagine," appellant's attorney apparently intended to stuff a jacket with items allegedly matching the stolen items listed on the receipt that Hernandez had printed. The prosecutor objected, arguing, "[T]his is not in evidence. It's not even a demonstrative aid, and it's inappropriate for closing argument." The trial court sustained the State's objection. On appeal, appellant contends that the court abused its discretion by sustaining the objection and thus disallowing the demonstration; he argues that the demonstration would have highlighted the fact that it was "highly questionable" whether appellant had threatened Hernandez.

We review a trial court's rulings on objections to jury arguments under an abuse of discretion standard. *See Lemon v. State,* 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). A trial court has broad discretion in controlling the scope of closing argument, but it may not prevent defense counsel from making a point essential to the defense. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.).

To summarize the evidence that has been admitted, an attorney may, at the court's discretion, use visual aids in closing argument. *See Jarnigan v. State*, 57 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). But closing argument cannot be used to inject new facts into the record. *See Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011); *Sparkman v. State*, 968 S.W.2d 373, 380–81 (Tex. App.—Tyler 1997, pet. ref'd) (op. on reh'g)

17

("Defendant's Exhibit # 4 . . . cannot be said to meet the requirements of proper jury argument because [it] include[s] references to facts which were not in evidence."), *cert. denied*, 523 U.S. 1085 (1998); *see also Cowan v. State*, No. 01-89-00068-CR, 1990 WL 113630, at *8 (Tex. App.—Houston [1st Dist.] Aug. 9, 1990, pet. ref'd) (not designated for publication) (ruling that the prosecutor's jury argument demonstration of having a deputy wear a stocking to illustrate the ability to discern the identity of an attacker wearing a stocking was not supported by the record because there was no evidence of how the attacker wore the stocking or the color of the stocking).

The record demonstrates that appellant's proposed demonstration would have injected new facts into the record. First, appellant's counsel recognized at trial that the jacket to be used for the demonstration was only "somewhat similar" to the green jacket that appellant used in the robberies. Second, appellant did not establish that the products that he intended to stuff into the jacket had the same physical characteristics as the products that, according to Hernandez, appellant had stolen. Appellant's attorney had obtained the items that he intended to stuff into the jacket by referring to the receipt from the 99 Cent Only store that was admitted as State's Exhibit 19. But that receipt does not describe the physical characteristics or the packaging of the items that it lists. As the trial court observed, there was no testimony that the items to be used in the

18

demonstration had the same bulkiness as the items represented by the receipt.[8] The parties did not introduce the items that appellant had taken from the store into evidence, nor did the parties present photographs of those items. And from this record, we have no way of knowing whether appellant's counsel researched the products to determine that they had not changed packaging since the time of the theft. Thus, because the proposed demonstration would have introduced new, unsubstantiated facts concerning the physical characteristics of the items that appellant stole, and because the bulkiness of those items was the very reason for the demonstration, we hold that the trial court did not abuse its discretion by excluding the demonstration. *See Lemon,* 298 S.W.3d at 707. We overrule appellant's third issue.

---

[8]The receipt includes twenty-five items, but the last item is "Misc Taxable Item," which appellant's counsel obviously could not match without more details.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgments.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 12, 2012